AMOS WOODRUFF ET AL. v. STATE OF MISSISSIPPI ET AL.

1. LEVEE DISTRICT No. 1.   *Taxes.*   *Lands liable.*   *Trust for payment of bonds.*   *Laws* 1871, *pp.* 1–57.

Under the act of March 17, 1871 (Laws 1871, pp. 1–57), the lands in levee district No. 1 were made liable for two per centum of their value, per annum, for twelve years as a tax, and the proceeds arising therefrom, when collected, became a trust fund for the payment of the bonds provided for by the act.

2. SAME.   *Lands sold for levee taxes.*   *Purchased by levee board.*

Under said act lands which were sold for levee taxes and bid off by the levee treasurer, after the time for redemption expired—

(*a*) Were not themselves the trust fund, or any part thereof, pledged to creditors; but were

(*b*) Held by the board chargeable with state and county taxes, the collection of which alone was suspended during the board's holding of the land, and were so held

(*c*) Subject to liquidating levee taxes, accrued and to accrue, which were to be paid by the board.

3. SAME.   *Abatement act.*   *Laws* 1875, *p.* 11.   *Laws* 1876, *p.* 166.   *Laws* 1884, *p.* 182.   *Unconstitutional.*

Under the terms of the act of March 17, 1871 (Laws 1871, pp. 1–57), the bondholders acquired such a contractual right that the following statutes, as applied to them, are unconstitutional as impairing the same:

(*a*) The abatement act of 1875 (Laws 1875, p. 11), in so far as it undertakes to abate taxes legally due levee board No. 1;

(*b*) The act of April 11, 1876 (Laws 1876, p. 350), in so far as it seeks to avoid legally due No. 1 levee taxes, or to release lands therefrom.

(*c*) The act of March 14, 1884 (Laws 1884, p. 182), relating to levee lands held by purchasers  and providing for quitclaims by the state, in so far as it affects the rights of said bondholders.

4. SAME.   *Equity jurisdiction.*   *Limitation of actions.*

Under the said act of 1871 a scheme is provided for collecting the taxes therein authorized, and equity—

(*a*) Is without jurisdiction to assess and collect such taxes, but,

(*b*) Has jurisdiction to enforce the trust created by the act in favor of the bondholders, creditors of the levee board, and a suit so to do, brought at the capital of the state, without the district, is maintainable when brought against state officers and a defendant having its domicile at the capital, but such suit

(*c*) Must be brought within ten years after the maturity of the bonds, or it will be barred by the limitation applicable to express trusts.

5. SAME. *Chancery pleadings. Bill to enforce trust.*

A bill by the holders of bonds issued under said act of March 17, 1871, to subject to their demands lands sold to and held by the levee board of district No. 1, should specifically describe what lands of the respective defendants were sold to and held by said board, and the amount of the taxes claimed to be due thereon.

6. SAME. *Mandamus. Limitation of actions.*

Mandamus to enforce the assessment and collection of the taxes levied by said act of March 17, 1871, was an available remedy thereunder, but a proceeding therefor is barred by the six years' statute of limitations.

7. SAME. *Laws 1884, p. 184.*

The imposition by the said act of 1871 of charges and assessments on lands for the payment of the bonds provided for therein, is beyond legislative control; and the act of 1884 (laws 1884, p. 184), undertaking to repeal the same in nowise obstructed a suit by the bondholders to enforce the assessment and collection of the taxes, as provided in said act, and caused no interruption of the statute of limitations.

8. SAME. *State trustee, etc. Laws 1876, p. 178.*

Under the said act of 1871, the state held as a trustee in possession, and is liable to the bondholders for—

(*a*) Lands held by the state subject to levee taxes under said act, which had been sold to the state for such taxes, in whole or in part;

(*b*) The levee taxes of district No. 1, due on all the lands held by the state when suit was begun, title to which had been transferred to the state under the act of 1876 (laws 1876, p. 178), and,

(*c*) All funds in the state treasury, when suit was begun, to the credit of district No. 1.

9. LIQUIDATING LEVEE BOARD. *Laws* 1866–1867, *p.* 237, *sec.* 13. *Exemption from state taxation.*

Under the act of February 13, 1867 (Laws 1866, 1867, p. 237, sec. 13), all lands purchased by the liquidating levee board for delinquent levee taxes were, while held by said board, exempt from all state taxation.

10. SAME. *Tax sales. Wrong sale day. Failure to give bond. Deeds.*

Tax sales to the liquidating levee board for delinquent liquidating taxes are not void—

(*a*) Because not made on the proper day; nor,

(*b*) Because the tax collectors had not executed their official bonds before making the sales; nor,

(*c*) Because deeds were not executed by the tax collectors, ` there being written evidence of the sale.

11. SAME. *Curative acts. Laws* 1860, *p.* 213. *Code* 1871, *sec.* 1709. *Laws* 1873, *p.* 152, *sec.* 5.

The curative acts of 1860 (Laws 1860, p. 213), 1871 (Code 1871, § 1709), and 1873 (Laws 1873, p. 152, sec. 5), perfected the title of the levee board to lands sold to it for delinquent levee taxes by the expiration of the several periods of limitation prescribed in them, respectively, as to all irregularities in the sales.

FROM the chancery court, first district, of Hinds county.

HON. WARREN COWAN, Chancellor.

Woodruff and others, appellants, were the complainants in the court below; the state and others, appellees, were defendants there. The case was previously decided by the state supreme court, and is reported *Woodruff* v. *State*, 66 Miss., 298. From that decision an appeal was prosecuted to the supreme court of the United States, which last mentioned court reversed the decision of the supreme court of Mississippi, and remanded the cause for decision on the other grounds of demurrer to the bill not considered by either of said supreme courts. *Woodruff* v. *Mississippi*, 162 U. S. Reports, 291. The decision of the state supreme court now reported was made after the case had been remanded to it by the United States supreme court. Reference is made to the reports of the case 66 Miss., 298, and 162 U. S., 291, for statement of the facts; for the convenience of the read-

er, however, it is here stated that the bill of complaint was filed in the chancery court of Hinds county by complainants as the bondholders of levee district No. 1, created by act of March 17, 1871 (Laws 1871, pp. 1-57). The purpose of the bill was the collection of the bonds, amounting to the principal sum of $350,000. The said act provided for the issuance by the board of bonds not to exceed $1,000,000, and levied a tax on the lands of the district for a period of twelve years, including the year 1871. At sales made for taxes the board was authorized to buy the lands in default of bidders, and with power to sell the same. At the time levee district No. 1 was created, there was existing a board of liquidating levee commissioners, created by the act of 1865, as amended in 1867 (Laws 1867, p. 237), which levied an acreage tax on the lands of the district, to be continued until a certain large debt mentioned in the act was paid. In default of bidders, the liquidating levee commissioners were required to purchase all lands sold at liquidating levee tax sales, and the lands thus acquired were made a trust fund for the pay-ment of the bonds issued under the act of 1867. After the ex-piration of two years, the title vested absolutely in the liqui-dating levee commissioners, who were given full power in re-spect to the sale of said lands for the benefit of bondholders. The act provided that all lands, while held by the liquidating levee commissioners, should be exempt from state, county and levee taxes. A great part of the territory forming the original levee district and the liquidating levee district was included in district No. 1, created by the act of March 17, 1871. The larger part of the lands in controversy were sold to the liquidat-ing levee commissioners, and subsequently purchased from the board by the defendants. A portion of the land claimed by the complainants in their bill had been sold to levee district No. 1, which sales in part embraced lands held at the time by the liquidating levee commissioners. The act of March 17, 1871, made the taxes levied by that act a lien on the land, and made the taxes, when collected, a trust fund for the payment of the

bondholders of that district; but it did not make the lands held by the board under tax sales a trust fund for the payment of the bondholders, but the lands simply constituted general assets of the board of district No. 1. The act of April 11, 1876 (Laws 1876, p. 178), abolished the board of commissioners of district No. 1, and made the auditor and treasurer *ex officio* commissioners of said district, with all the power of the original commissioners. This act also provided that the title to all lands held by the commissioners of the district No. 1 should be vested in the state and the auditor and treasurer, *ex officio* land commissioners, with full power to settle up the unfinished business of levee board of district No. 1. By another act of April 11, 1876 (Laws 1876, p. 166), the office of liquidating levee commissioners was abolished, and the auditor and treasurer of the state were made *ex officio* liquidating levee commissioners, with all the powers of the former liquidating levee commissioners. It was also provided by the first named of these two acts that thereafter the taxes levied and assessed for district No. 1 should be collected by the sheriffs of the several counties composing that district at the same time of the collection of the state and county taxes. In selling the lands held by the state under tax sales, the taxes of district No. 1 were required to be paid by the purchaser, and these taxes thus collected stood as a trust fund for the creditors of district No. 1. It is claimed in the bill that lands were sold by the state to purchasers without requiring the payment of all taxes on said lands to commissioners of district No. 1, and that these sales were illegal and void, and that such purchases had been made of some of these lands by these defendants. It is also claimed by the bill that the state now holds title to a large portion of the land in controversy, which is being sold without the collection of the taxes of district No. 1; that these taxes should be collected by the state, and when collected from the purchaser from the state as part of the purchase money, should be paid over to these complainants. It is insisted in the bill that a large part of the lands in

controversy were acquired by the liquidating levee board at sales which were irregular and void, and therefore these lands were subject to the payment of said taxes. It is specifically objected in the bill that the tax sales at which the liquidating levee commissioners purchased these lands were made on the wrong day; that special bonds were not given by the tax collector, as required by the law, prior to making the sales; that the lands were not sold in the smallest legal subdivisions, and that the sales were made for several years' back taxes. By the act of February 10, 1860 (laws 1860, p. 213), it was provided that no tax sale should be impeached or invalidated for any cause except for fraud or mistake in the assessment or sale, or upon proof of the payment of the taxes prior to the sale. This statute also provided that no suit to set aside any title acquired under such sale should be brought unless within five years from the date of the sale. The general purpose of the bill was to charge the lands with the payment of these taxes on the several theories stated.

*Calhoon & Green,* for appellants.

The state, as trustee, became liable to account for the trust estate. *Shotwell* v. *Louisville, etc., Ry. Co.,* 69 Miss., 541; 3 Pom. Eq. Juris., secs. 1062-7; Perry on Trusts, secs. 843-4; *Davis* v. *Gray,* 16 Wall., 203; *United States* v. *Lee,* 106 U. S., 196; *Green* v. *Gibbs,* 54 Miss., 592.

Purchasers of the trust estate, with notice, must account as trustees. Perry on Trusts, secs. 840, 828; *Joor* v. *Williams,* 38 Miss., 546; *Chiles* v. *Gallagher,* 67 Miss., 422; *McGown* v. *McGown,* 48 Miss., 553; *Westbrook* v. *Munger,* 62 Miss., 316.

The trust, being of the essence of the contract evidenced by the act of March 17, 1871, and of the bonds issued thereunder, could not be impaired by abolishing the corporation under the act of 1884, p. 184; upon abolition of the corporation a court of equity would administer the trust estate. Pot·

ter's Dwarris Stat., 474; *Merriwether* v. *Garrett,* 102 U. S., 514; *Broughton* v. *Pensacola,* 93 U. S., 269; Cooley Tax., 143; Woods Fields' Corp., secs. 450--1.

The tax imposed by the act of 1871 is *in rem,* and a lien, and a part of the trust, and enforceable in equity. *Green* v. *Gibbs,* 54 Miss., 592; *Nugent* v. *Comis.,* 58 Miss., 213; *Archibald* v. *Banks,* 64 Miss., 523; *Fletcher* v. *Money,* 2 Story, 555. As a contract it is irrepealable, and its obligation is protected by the federal constitution. *Wabash* v. *Beers,* 2 Black, 448; *Van Hoffman* v. *Quincy,* 4 Wall., 554; *Wolfe* v. *New Orleans,* 103 U. S., 367; *Magee* v. *Mathis,* 4 Wall., 143; *Green* v. *Gibbs,* 54 Miss., *supra;* Cooley Tax., 80.

The trust, under the act of 1871, is in both the lands and the taxes. This is not only true under the act of March 17, 1871, but, also, by reason of the operation of the acts of April 11, 1876, whereby the state took title to all of the lands theretofore sold for No. 1 taxes, and undertook to administer these lands, as well as the taxes to accrue, as trustee, for No. 1 board and its creditors. The state not only took the title to all lands sold prior to April 11, 1876, for No. 1 taxes, but, by said act it forbade any suit to be brought against it in respect thereto, and covenanted that upon a sale or donation of the lands by the state the grantee would be required to pay the taxes due thereon to No. 1 board. Sec. 13, acts 1876. It was competent for the legislature to create this trust and change the trustee. *Shotwell* v. *Louisville, etc., Ry. Co.,* 69 Miss., 541.

The trust in equity arose in the lands by the repeal of the act of March 17, 1871, by the act of 1884, p. 184, and whereby the corporation was abolished, without capacity for revivor, and, thus, leaving the legal title of No. 1 lands in the state, as trustee.

There is no repeal in said acts of 1876 of the act of 1871, which declared that upon a failure to pay the No. 1 taxes the lands should be sold to No. 1 board, and that such sale should vest a perfect title in the No. 1 treasurer. State and county

taxes were "suspended" under the operation of this perfect title in No. 1 board.

If the taxes were the trust, as declared in *Shotwell* v. *Louisville, etc., Ry., supra,* and these lands were bought for the trust taxes, aside from the terms of the act itself, the property in which the trust was invested would be held upon the same trust as the fund. *Simmons* v. *Ingram,* 60 Miss., 886.

*Shotwell* v. *Louisville, etc., Ry., supra,* was a contest between a purchaser of the No. 1 title for No. 1 bonds, and holders of title from the state by prior conveyances. No. 1 creditors were not parties to that suit. There was no averment there of the insolvency of the trust estate. In that case the court held that the subsequent acts making No. 1 bonds receivable for purchase money, was not prejudicial, because of the presumed equivalent of state and county taxes surrendered. Such an act, so interpreted, was not only a breach of trust, but impaired the obligation of complainant's contracts, contrary to the constitution of the United States. Here the tax was limited to the fund raised in twelve years. The power, under subsequent acts, of some of the bondholders to absorb the whole trust estate, leaving complainants' bonds unprovided for, would, necessarily, impair the obligation of their contracts contrary to the federal constitution. The "obligation" embraces the means provided for the enforcement of the contract at the time it is made. *Walker* v. *Whitehead,* 16 Wall., 314; *McCracken* v. *Hayward,* 2 How., 608; *Osborn* v. *Nicholson,* 13 Wall., 654; *Louisiana* v. *New Orleans,* 102 U. S., 203; *Edwards* v. *Kenzey,* 96 U. S., 600. It was held in *Barings* v. *Dabney,* 19 Wall., 1, that the assets of an insolvent incorporated bank could not be appropriated by legislation to pay certain creditors, and that as to nonassenting creditors, such legislation impaired the obligation of their contracts. See *Curran* v. *Arkansas,* 15 How., 317. The state is bound in its contracts by the federal constitution. *Hall* v. *Wisconsin,* 103 U. S., 5. In Shotwell's case the constitutional

rights of creditors were not drawn in question, and, hence, it does not bind them. *Arcardi* v. *State,* 19 Wall., 635.

The lands sold for No. 1 taxes prior to said acts of 1876, constituted property of No. 1 board, and complainants were its creditors; as such, under the general law, irrespective of any special pledge by legislation, these lands constituted assets, and could not be diverted by legislation to pay any special creditor. The state accepted the trust in 1876; the great body of the lands had then been sold for No. 1 taxes; this title the state took as it then existed under the act of March 17, 1871; nothing the state could do after becoming trustee could divert the lands, or their proceeds, from the legal status they occupied upon the acceptance of the trust.

No power of repeal of the provisions of the act of March 17, 1871, existed. (1) The levees—a public necessity for the health and safety of the people and property of No. 1 district— were to be built, and were provided to be built under this police power of the legislature. *Hagan* v. *Reclamation District,* 111 U. S. (2) No. 1 board was to have perpetual succession to carry out "the purposes hereinafter designated." Laws 1871, sec. 1. (3) Bonds for construction of the levees, not to exceed $1,000,000, were to be issued, and a tax for the limited period of twelve years was imposed for their payment. (4) If this tax was unpaid, the land was to be sold therefor, a perfect title was to be conveyed, and the lands were to be sold for "cash;" and, by sec. 20, no part of this fund was to be used except as prescribed by that act, and it was to be invested in United States bonds until required to pay the bonds.

Even where there is a reserved power of repeal, it cannot be exercised so as to impair the obligation of the contract. 2 Morawetz Corp., secs. 1101–2, and cases.

If corporations with a capital stock and an unlimited power of acquisition, could not be authorized by legislation to impair their contracts, *a fortiori,* would one with no assets except a limited tax, and the lands sold therefor, not be capable of receiving such authority.

The lands, or their proceeds, could not be devoted to other purposes than the payment of bonds under said sec. 20 of said act of 1871.

Where lands of a municipality are security for its bonds, the legislature cannot authorize their sale free of the charge without impairing the obligation of the contract. 1 Beach Pub. Corp., sec. 717.

The acts of April 11, 1876, attempt to extend the time of redemption of the lands sold for No. 1 taxes, after a perfect title had been vested in the No. 1 board, and upon terms differing from the act of March 17, 1871, and in this particular the said acts are unconstitutional. *Moody* v. *Hoskins* 64 Miss., 468.

Under the act of March 17, 1871, the sales by and redemption of lands from No. 1 board must be for cash; they "shall become a part of the levee fund, and may be sold as said board of levee commissioners may order;" and this fund was to be invested in United States bonds. There was no power under the contract to sell or to redeem for other legal tender than cash, and the subsequent acts authorizing sales and redemptions in bonds impaired the obligation of complainants' contract, contrary to the federal constitution.

The act of March 14, 1884, p. 182, directed the execution of a quitclaim of the state's title to the purchasers under the *Green* v. *Gibbs* decree—purchasers of the liquidating levee board's title under the act of 1867—upon the payment of all state, county, and levee taxes. By this act the state, pursuant to the covenant of sec. 13, act of 1876, required the purchaser to pay all the taxes accrued to No. 1 board as a condition precedent to receiving the title of the state, so vested in it under said acts of 1876. The requirement is the payment of "all . . levee taxes due thereon," and that the act shall not be so construed "as to abate any levee taxes whatever . . . which had accrued prior to January 1, 1883." No power existed to quitclaim until all the taxes were paid. *McCullough* v.

*Stone,* 64 Miss., 378; *Murdock* v. *Chaffe,* 67 Miss., 752. All the No. 1 taxes upon all lands sold for No. 1 taxes would be exigible under this act of 1884, from the purchasers. The act of March 5, 1884, abolished No. 1 board. The state, being in possession of the title of No. 1 board, upon sales for No. 1 taxes, as trustee, specifically exacts the payment of accrued No. 1 taxes as a condition of parting with its title, and this, on March 14, 1884, nine days after No. 1 board had been abolished as a corporate entity. The bill avers that no No. 1 taxes were paid when the quitclaim deeds under the act of 1884 were executed, and, therefore, no title passed thereby from the state.

The act of 1888, p. 40, directed the auditor to convey to the purchasers, under the *Green* v. *Gibbs* decree, whatever title the state had, and thus is attempted to make superior the inferior title of the liquidating levee board. This act not only impaired the obligation of complainants' contracts, but deprived them of their property without due process of law, contrary to the federal constitution. This act deprived the state of title, as trustee, in the No. 1 lands, and vested it in the purchasers of the liquidating levee title, and, thereby, the trustee, the state, converted the trust estate to its own use, or to the use of its self-constituted beneficiary.

If the extent of the right of No. 1 creditors was to have a lien for the No. 1 taxes accrued enforced against the lands sold to No. 1 board, then the act of 1888 preserved that right, and required the payment of all the No. 1 taxes in cash, and if the auditor made an error in calculation, then that the amount of uncollected taxes should stand as a charge upon the land so conveyed, and the state would be liable for failing to collect the taxes when the conveyance was made, and the lands so conveyed would be liable in the hands of the Louisville, New Orleans & Texas Ry. Co., Delta & Pine Land Co., Burroughs, and other vendees, and their vendees, for the amount so uncollected.

The title of No. 1 board by sales for No. 1 taxes is a superior

title to that of liquidating levee board, whether prior or subsequent in time.

The act of March 17, 1871, was the exercise of the police power of the state, and thereby was imposed a tax *in rem* upon every acre of land in the district, with the exception of state and United States lands, but not excepting lands acquired by the liquidating levee board under the act of 1867. This act of 1871 was to provide for the then needs of the people, regardless of the conditions existent in 1867. The tax imposed was in aid of this police power. The lands of all persons and corporations within the No. 1 district were to be protected from overflow by the erection of these levees.

The act of 1867, creating liquidating levee district, was the exercise of the legislative power to create a corporation to ascertain and pay off antecedent debts due by previous levee boards, and the exercise of the taxing power of the legislature in aid thereof. Its functions were not governmental, nor even public, but to raise funds by taxation to pay off the debts due to private persons as creditors. Such corporation held the lands "acquired" by sale for its taxes as a trust fund for its creditors. As such its lands, unless specially exempted, were subject to No. 1 taxes.

There is no grant of exemption of the lands "acquired" by the liquidating levee board in the act creating No. 1 board. The claim of exemption is based on sec. 13, act of 1867, providing that "all lands acquired by this board under the provisions of this act, or which belonged to the general board of levee commissioners, shall be exempt from state taxation for levee purposes, or otherwise, until the same shall be sold or disposed of by this board," etc. The liquidating levee board became absolute owner of all lands acquired by it, with unlimited power of sale at any price or terms it might desire, and just as any individual would be owner. This exemption cannot avail against the subsequently imposed No. 1 taxes.

1. Upon construction, sec. 13 is an exemption from the

exercise of the general taxing power of the state. Exemptions must be strictly construed, as they are in derogation of the powers of the sovereign. The language is "state taxation," and state taxation means taxation for revenue under the general taxing powers. The qualification of "for levee purposes, or otherwise," does not affect this. "State taxation for all pur-liable for any tax or imposition whatever," did not cover a local assessment. 7 Md., 517; 11 Johns., 77. "Shall not be liable for any tax or imposition whatever," did not cover a local assessment (*Macon* v. *Patty,* 57 Miss., 385), nor did "all public taxes, rates, and assessments" (Cooley Tax., 207, note); "or otherwise," means *"ejusdem generis." Ice Co.* v. *City,* 69 Miss., 86. A general exemption does not embrace local assess-ments. Cooley Tax., 20. The construction of levees is the exercise of the police power, and the tax levied therefor is a local assessment. Cooley Tax., 590-1.

2. This exemption, if granted, was invalid as against the subsequent exercise of this police power for the construction of levees. The legislature cannot bargain away its police power. *Boyd* v. *Alabama,* 94 U. S., 645; *Beer* v. *Massachusetts,* 97 U. S., 33; *Hagan* v. *Reclamation District,* 111 U. S., 752. The state can grant an exclusive franchise, and such grant is pro-tected by the federal constitution, but such grant does not deprive the state of the power to preserve public health, morals, or safety, and the power still exists to conserve these against such grant. *New Orleans* v. *Louisiana Gas Co.,* 115 U. S., 664-672; Cooley Tax., 137. This act of March 17, 1871, was ex-pressly held to be the exercise of the police power. *Swope* v. *Dailey,* 47 Miss., 367. Public property is liable to local assess-ments. Burrough's Tax., 473; Cooley Tax., 173; *Provident Inst.* v. *Jersey City,* 113 U. S., 596.

If the exemption was valid, the lands were not "acquired" by the liquidating levee board, because, (1) the sales were made on the wrong day; (2) no debts were registered as required by the act of 1867, and they were barred under the act of 1867; (3)

the tax collectors did not give bond, as required by law, before collecting or selling; (4) the lands were sold to pay bonds issued under the acts of 1867, and May 13, 1871, and acts amendatory, for claims barred under the act of 1867. For each of these reasons the titles of liquidating levee board under sales prior in time to those to No. 1 board, were void.

1. Sales made on the wrong day were void. *Griffin* v. *Ellis*, 63 Miss., 348; *Mager* v. *Peeples*, 58 Miss., 628; *Vasser* v. *George*, 47 Miss., 713.

2. Presentation within the time prescribed, and registration, as prescribed, were conditions precedent to the exercise of the special jurisdiction in the commissioners to allow the claim. If not presented by June 1, 1867, the claims were all barred. *Mitchell* v. *Wood*, 47 Miss., 231. The legislature could not revive a claim barred by the statute of limitations. *Wright* v. *Oakley*, 5 Met., 500; *Battle* v. *Forbes*, 18 Pick., 532; *Davis* v. *Minor*, 1 How. (Miss.), 183; *Thompson* v. *State*, 54 Miss., 740. Such registration laws are constitutional. *Watson* v. *Doherty*, 56 Miss., 628.

3. The execution of the required bond was a condition precedent to the power in the tax collectors to collect or sell. *Vasser* v. *George*, 47 Miss., 713.

The act of March 17, 1871, was passed after all of the claims were barred under the act of 1867, and, afterwards, on May 13, 1871, the bar was removed, and, also, subsequently thereto. No debt could be created by these subsequent acts, waiving the bar, without impairing the obligation of complainants' contracts, contrary to the federal constitution.

The extraordinary character of the summary proceeding under the act of 1867, whereby, without the consent of the owner of the land, his property became taxed *in rem*, to pay an antecedent debt for which it was not liable, to be ascertained by commissioners as a special court, in the manner prescribed by the act, would require a strict compliance with the terms of the act, especially against subsequently intervening rights of

third persons. *Mattingly* v. *District,* 97 U. S., 690. Waivers and curative acts operate only *inter partes.* Freeman Void Jud. Sales, sec. 61. If the proceedings to allow claims were without jurisdiction, they were void *ab initio.*

The statutes of limitation do not bar. The only general statute applicable, if any, would be the ten years' statute applicable to express trusts. *Cooper* v. *Cooper,* 61 Miss., 694. The bonds matured from 1872 to 1881. The tax to pay each and every of these bonds is a part of the trust estate, and it accrued for twelve years, and the last year's taxes was due in 1883. The lands, as a part of the trust, did not become the property of the board until two years after each sale day. In 1876, the last sale of lands was made directly to No. 1 board; after 1875, sales were made directly to the state. In 1876 the state vested title to the lands then held by No. 1 board, and the taxes—the whole trust estate—in itself, as trustee. The trust was then recognized, and its administration begun by the state, as trustee, for the express purpose of paying the bonds. This trust relation continued. It required an unequivocal adverse holding by the trustee to start the statute in motion. Perry on Trusts, sec. 840; *Cooper* v. *Cooper,* 61 Miss., 694; *Westbrook* v. *Munger,* 62 Miss., 316. Prior to the statute barring the remedy on the mortgage when the debt was barred, the remedy by foreclosure continued, though the personal action on the debt was barred. *A fortiori* would a debt to be paid by the administration of the whole trust estate, through a series of years, not be barred until the trust itself was barred. The trust became a part of the bonds by indorsement. The whole taxes, for every year, being the trust estate, those for 1882 stood as the means of payment for the bonds due in 1872, and *vice versa*; and the statute could not run on the bonds until the whole of the taxes matured, or in 1883; and this suit was brought in 1888. Until 1884 the state continued to administer the trust estate, not claiming adversely, but declaring by the act of 1876 that no suit should be brought touching the trust estate while in

its hands, and that when it, as trustee, granted the lands the taxes due should be collected. Under such an act there could be no adverse holding until, in 1884 and 1888, the grant of the lands was made to the purchasers under the *Green* v. *Gibbs* decree, and the taxes were not collected. In 1884 No. 1 corporation was abolished under the power of the legislature. *Nevitt* v. *Bank,* 6 Smed. & M., 513; *Merriwether* v. *Garrett,* 102 U. S., 472. In equity its assets became a trust in the hands of the then trustee for creditors. *Greenwood* v. *Freight Co.,* 105 U. S., 13--19.

There is no suggestion of any bar of the statute of limitations as to this trust in the act of 1871. There has been no adverse possession to set it in motion. The abatement act of 1875 was unconstitutional as to No. 1 titles (*Sigman* v. *Lundy,* 66 Miss., 530), and a sale under it conveyed no title to the vendee. It would be a mere void cloud on title, and this would not set the statute in motion (2 Beach Mod. Eq. Juris., sec. 565), nor under the act of 1860, nor § 1709, code 1871, for these effect only titles as were legally liable to be sold. *Metcalfe* v. *Perry,* 66 Miss., 68; *Ricks* v. *Baskett,* 68 Miss., 254.

The acts of 1876 did not set the statute in motion, for these recognized the trust, made the state trustee, and covenanted to protect the trust for creditors upon a sale. The state, under this act, could not set up the statute of limitations, for therein is an express recognition of the trust. So, no statute could run either in favor of the state nor the other defendants, purchasers under the *Green* v. *Gibbs* decree, for, if under the act of 1884, all taxes were not paid no title passed, and by said act, as also by the act of 1888, the state required the payment of all No. 1 taxes in cash; thereby the state affirmed the trust as then existent, and the purchasers covenanted, by taking title under the act of 1888, that the lands should stand charged with the trust in the No. 1 taxes. *Lee* v. *Newman,* 55 Miss., 365; *Ware* v. *Allen,* 64 Miss., 547; *Chiles* v. *Gallagher,* 67

Miss., 422. So the state and these purchasers under *Green* v.
*Gibbs* decree cannot set up the statute of limitations against
the trust. Being bound to pay the taxes, they could not defeat
recovery because the bondholder had waited for his trustee to
execute the trust. After 1876 there was no one *in esse* to sue
at law (1 Beach Pub. Corp., sec. 476; *Bank* v. *Duncan,* 56
Miss., 173), and the only remedy was in equity, and the trustee
acknowledged and was administering the trust, and this would
not apply in that state of case. Sec. 7, acts 1860 (§ 1709,
Code 1871), had no effect upon the rights of the creditors of No.
1 board in favor of the vendees of the liquidating levee board.
No. 1 title being the superior title, the status of liquidating
levee titles could never be made paramount; the lands were
taxed; and while the legislature might *inter partes* waive
the bar, and permit barred claims to be proven, it could not
do so against third persons. The express terms of the act of
1871 are that "a perfect title in fee simple" is vested. The
act of 1860, as a curative act, was *in fieri* in 1871 upon sales
to liquidating levee board in 1868 *et sequens,* and by the
said act of 1871 the purchaser acquired the title and "all
claims" upon the land. Title could mature only as to the first
sales in 1873, and in code of 1871 the act of 1860 was re-
pealed, and the three years of § 1709, code 1871, was repealed
April, 1873. So these curative acts, if valid and applicable,
never became consummated. *Jonas* v. *Flannekin,* 69 Miss., 586;
*Gibson* v. *Berry,* 66 Miss., 515, nor *Sigman* v. *Lundy, Id.,*
522, do not conflict with this. They were cases of the orig-
inal owner, and in *Sigman* v. *Lundy* these statutes were ap-
plied to perfect the state's title.

As to all sales made after 1871, as No. 1 sales were made
in January and liquidating levee sales in May, the cure would
attach to No. 1 sales first.

By sec. 4, act of 1873, repealing all conflicting acts, defective
liquidating levee sales were declared to have the effect of a
mortgage, and, thereby the whole policy of cure was changed

from vesting title to creating a lien. No cure had attached at this date, April 11, 1873, to any defective sale. While inchoate the legislature destroys the vesting of title. This established No. 1 title as paramount, for this mortgage was subsequent to the lien and title of No. 1 board. The five years of sec. 5, acts 1873, was rendered inoperative in 1876, by the state taking title to itself of both liquidating levee and No. 1 lands, and thereafter no curative act could apply as between liquidating levee and No. 1 titles.

In *Dingey* v. *Paxton,* 60 Miss., 1038, it was held that these curative acts, as statutes of limitation, were unconstitutional.

The acts of 1873, and § 1709, code 1871, being subsequent acts to the act of March 17, 1871, it was beyond the power of the legislature to impair the perfect title of that act, and to do so would violate the federal constitution.

The bonds were not barred. (1) The corporation was abolished in 1876, and this suspended the statute. 1 Beach Pub. Corp., sec. 476. The first bonds matured in 1872, the last 1881. The code of 1871 omitted any statute on sealed instruments. This omission was cured in 1873, p. 42, by prescribing seven years. Seven years from 1873 would be 1880, but in 1876 the state took title to the trust, and prohibited suits in respect to it. In 1884 the corporation was abolished, and the lands were quitclaimed in 1884, by the state, to the purchasers under *Green* v. *Gibbs.* The suit was brought in 1888. So, upon the bonds themselves there was a continual recognition of the trust and liability for their payment.

The acts of 1874 and 1876 and 1884, making bonds and coupons of No. 1 board receivable for purchase and redemption money of No. 1 lands, was in conflict with the act of 1871, requiring cash to be paid, and any such sale or redemption for bonds was void, and left the title in the state. *McCulloch* v. *Stone, supra.* The act of 1876, sec. 13, provided that the taxes should be paid. In pursuance of this the act of 1884 required the purchasers under *Green* v. *Gibbs* decree to pay them, and

the act of 1888 requires them to be paid in money. These acts attempting to substitute bonds impaired the obligation of complainants' contracts, contrary to the federal constitution.

*Frank Johnston,* for the appellees, the Delta & Pine Land Company.

The general purpose of the bill filed by these appellants is to charge the lands of the appellees, the Delta & Pine Land Company, the Louisville, New Orleans & Texas Railway Company, Swan, and Burroughs, with the taxes levied by the act of March 17, 1871, creating the levee board of district No. 1, and to apply said taxes to the payment of $300,000 of bonds issued under said act, and which are now held by the appellants. The bill also prays for an accounting against the state for taxes on lands purchased by the levee board of district No. 1, at levee tax sales, and which were vested in the state by the terms of the act of April 11, 1876, and for an accounting for levee taxes which the state should have collected in selling said lands, and also for an accounting of lands now held by state on which taxes of said levee district are charged. In this branch of the case the state is alone concerned.

It is shown by the bill that the lands now owned by these defendants were acquired by them from the liquidating levee commissioners, who purchased the same at liquidating levee tax sales, under the act of February 13, 1867.

The act of February 13, 1867, liquidated the debts contracted by the former levee board, created by the act of December 2, 1858, and levied a specific acreage tax on all of the lands in this levee district for the payment of the new bonds issued under the authority of this act, which taxes were to be continued until the entire debt was paid.

These taxes, thus levied, were expressly declared by the act of 1867 to constitute a trust fund for the payment of the bonds. And all lands purchased by the liquidating levee commissioners at tax sales made under this act, or which were

held by the former levee board of the levee district, were declared, by the act of 1867, to constitute a trust fund dedicated exclusively to the payment of the bonds issued under said act.

The lands thus held were to be sold for that purpose by the liquidating levee commissioners, without any limitation in respect to their powers of sale.

It was declared by sec. 13 of the act that the lands, while thus held by the liquidating levee commissioners, were exempt from all state, county, or levee taxes.

These appellees purchased the lands from the liquidating levee commissioners in 1881, under the decree in the equity cause of *Green v. Gibbs and Hemingway, ex officio* liquidating levee commissioners, in which cause all of the lands then held by these commissioners were administered and sold for the payment of the bonds issued under the act of February 13, 1867.

Some of the liquidating levee tax sales under which these commissioners acquired these lands, occurred prior to, and some occurred subsequent to, the passage of the act of March 17, 1871.

The bonds issued under the act of March 17, 1871, were to be payable not later than ten years from January 1, 1871, and the taxes levied by the act were to continue for twelve successive years. These taxes, when collected, were made a trust fund for the payment of the bonds.

It is contended in behalf of the appellants that the exemption from taxation of the lands of the liquidating levee commissioners, provided by the act of February 13, 1867, was repealed by the act of March 17, 1871, by implication, and that the back taxes levied by the latter act are charged upon said lands, and can be collected in this proceeding for the payment of the bonds owned by the appellants.

The provision of the act of 1867 giving this exemption, was not repealed by the act of March 17, 1871. No suggestion of a purpose to repeal this exemption appears in the act of 1871 creating levee district No. 1. Its whole purpose was to

create a new levee board for construction purposes, and there is nothing in the statute suggestive of any purpose or intention to disturb the scheme by which the debts of the former levee board had been liquidated and their payment provided for by the act of February 13, 1867. The two statutes relate to different subjects, are entirely distinct in their operation, and are in no manner conflicting. Construed together every provision of each can be sustained and carried into operation. "The leaning of the courts is so strong against repealing the positive provisions of a former statute by construction, as almost to establish the doctrine of no repeal by implication." Potter's Dwarris, 154. This is a well-settled rule of construction. *Mc-Cool* v. *Smith,* 1 Black, U. S., 470; *Wood* v. *United States,* 16 Pet., 342; *Hartford* v. *United States,* 8 Cranch, 109; *Plum* v. *Lugar,* 49 N. J. L., 557.

Another view is conclusive against the suggestion of the repeal of this exemption. The act of February 13, 1867, as was expressly held in the case of *Gibbs* v. *Green,* 54 Miss., 609, was a contract between the state and the levee district on the one hand, and the bondholders on the other, and, as such, irrepealable in respect to all of its material terms and provisions. Precisely in point, and to the same effect, is the case of *McGee* v. *Matthews,* 4 Wall., 157, and also the case of *Von Hoffman* v. *Quincy,* reported in the same volume, in which similar statutes were held by the court to be contracts, and, as such, protected by the federal constitution.

It is also contended that the exemption can only be extended to general state and county taxation, and to taxes levied by the state for the payment of debts incurred by levee boards prior to 1867, and did not extend to the local assessments for levee construction provided by the act of March 17, 1867.

I concede that an exemption from taxation, in general terms, would not include local assessments, but the statute, in express terms, includes immunity from all levee taxes, as well as general taxation. The language of the statute is that the lands

held by the liquidating levee board, "shall be exempt from state taxation, for levee taxes or otherwise, until the same shall be disposed of by this board." A tax levied by the state for the purpose of paying debts created by the levee board, would be a tax for levee purposes within the meaning of this exemption. The purpose of the statute was, unquestionably, to exempt the lands of the liquidating levee commissioners, held in trust by them for the creditors of the levee district, from all local assessments, as well as from general taxation.

The collection of state and county taxes, and the taxes of levee district No. 1 were not suspended during the time when these lands were held by the liquidating levee commissioners, but the lands were entirely exempt from said taxes. Under the act of March 17, 1871, creating the levee board of district No. 1, the collection of state and county taxes was suspended in respect to lands held by said board, but this did not include the suspension of the liquidating levee taxes. Accordingly, the sales of lands held by the board of district No. 1, for liquidating levee taxes, were legally made, and under such sales the liquidating levee commissioners acquired valid titles, while none of the lands held by the liquidating levee commissioners could be sold for any taxes whatever.

It is averred in the bill, in order to avoid the effect of the exemption provision of the act of February 13, 1867, that the tax sales at which the liquidating levee commissioners acquired these lands, are void. It is objected that the sales were made on the wrong day, that the tax collectors did not execute the special bonds required by the act of December 2, 1858, and the act of February 13, 1867, and that deeds were not made by the tax collector, as required by law. The irregularity that the sales were made on the wrong day, is cured by the seventh section of the act of February 10, 1860, which limits the objections that may be made to tax titles, and which provides that no suit shall be brought to invalidate any tax title, except within five years from the date of the sale. *Nevin* v. *Baily,* 62 Miss., 433; *Sigman* v. *Lundy,* 60 Miss.,

529; *Gibson* v. *Berry,* 66 Miss.; *Cole* v. *Coon,* 70 Miss.   This statute applies to, and governs, levee tax titles.   *Belcher* v. *Moon,* 47 Miss., 613; *Green* v. *Williams,* 58 Miss., 752; *Metcalf* v. *Perry,* 66 Miss., 68.   The alleged failure of the tax collectors to execute special bonds did not invalidate the tax sales, under the operation of sec. 7, of the act of February 10, 1860, and also under sec. 5, of the act of April 10, 1873.   *Perry* v. *Powers,* 59 Miss., 5.   It is a well settled doctrine that statutory requirements in respect to the procedure in tax sales may be dispensed by curative statutes, operating prospectively, or retrospectively, where there is a valid tax levied, and the land is derelict.   Cooley on Taxation, p. 308, 371; *Mattingly* v. *The District of Columbia,* 97 U. S., 690.   The fact that the lands are vacant does not affect the operation and application of statutes of this character.   This was expressly decided in *Sigman* v. *Lundy, supra,* and this is according to the general doctrine.   *Parrish* v. *Stevens,* 3 S. & R., 298; *Robb* v. *Bowen,* 9 Penn. St., 71; *Johnson* v. *Jackson,* 70 Ind., 164; *Lawrence* v. *Kennedy,* 32 Wis., 281.   The averment that deeds were not executed in the manner required by the statutes is too vague and indefinite to be considered.   It appears, therefore, that the titles of the liquidating levee commissioners are valid, and the lands were not charged with the taxes sought to be collected in this proceeding.

The bill is brought for the collection of the bonds held by the complainant, but its immediate purpose is the collection of these taxes.   It proceeds upon the idea that the taxes levied are a trust fund for the payment of the bonds.   The act of March 17, 1871, provides that the taxes, when collected, shall be applied to the payment of the bonds.   But this does create such a trust that confers upon a court of equity the power of collecting these taxes.   The bonds constitute a legal demand, and the collection of a tax for the payment of such a debt does not come within the jurisdiction of a court of equity, for it is purely a legal demand.   The case of *Green* v. *Gibbs* proceeded

upon a different basis entirely. In that case the act of February 13, 1867, had made the lands of the levee board a trust fund for the bondholders who accepted bonds under that act, with the power of sale in the trustees, the liquidating levee commissioners. The court there had the jurisdiction to enforce the statutory trust by selling the lands.

The doctrine is well settled that the remedy of bondholders seeking payment of their bonds by the collection of taxes is at law and not in a court of equity. 2 Dillon on Mun. Corp., 4th ed., sec. 855; *Walker* v. *Muscatine,* 6 Wall., 481; *Rees* v. *Watertown,* 19 Wall., 197; *Heine* v. *Levee Commissioners,* 19 Wall., 655; *Thompson* v. *Allen County,* 115 U. S., 550.

The act of March 17, 1871, gave a special and effective remedy by mandamus to the bondholders for the collection of these taxes. In such cases the uniform doctrine is that the special remedy provided is exclusive. Cooley on Taxation, p. 300; *The State* v. *Piazza,* 66 Miss., 429.

The bill is barred by the seven years' limitation of the act of April 19, 1873, and the six years' limitation of § 2669 of the code of 1880, and it is barred by § 2695 of the code of 1880, providing that where remedies are concurrent at law and in equity, the remedy in equity shall be barred by the same period of time applicable to the action at law. The latest bond matured on January 1, 1881, and the bill was filed on August 17, 1888.

The ten years' limitation provided for bills in equity to enforce trusts, and in cases not otherwise provided for, has no application to this case, for, as far as these appellees are concerned, there is no trust involved in the claim, either on the bonds or for the taxes, and there are no trust relations whatever existing between these appellees and the appellants. Where an action at law on a demand is barred by limitation, a court of equity will apply the bar of the statute, although the equitable remedy is not within the terms of the statute; in all cases where the demand or right claimed is legal in its char-

acter, and the remedies at law and in equity are concurrent. *Switzer* v. *Hoffsinger,* 82 Va., 518; *Arnett* v. *Finney,* 41 N. J. Eq., 147, 151; *Bank* v. *Daniel,* 12 Pet., 56; *Elmendorf* v. *Taylor,* 10 Wheat., 152; *Smith* v. *Wheeler,* 58 Iowa, 669; *Mitchell* v. *Woodson,* 8 George, 507, 576; *Mandeville* v. *Lane,* 28 Miss., 317; *Goff* v. *Robbins,* 33 Miss., 153.

Another view of the question of the statute of limitations is conclusive. Sec. 2667 expressly provides that when a lien is given by law for the security of a debt no suit in equity can be maintained but within the time allowed for the commencement of an action at law. The appellants had six years under § 2669 of the code of 1880 within which to sue on the bonds at law, and the same period within which to proceed by mandamus under the act of March 17, 1871.

The contention that the board of levee district No. 1 was abolished by the act of March 5, 1884, and that, from that time, the statute of limitations ceased to run for the reason that there was no corporation to be sued on the bonds, cannot be sustained. The act of March 5, 1884, presented no more legal impediment for the collection of those taxes in a court of law than it does in a court of equity, and if a court of equity can now disregard that act and collect these taxes, it is equally clear that the courts of law could, at any time, before or after the act of 1884, have enforced the collection of the taxes.

The existence of the levee board was not necessary or indispensable in the proceeding by mandamus against the tax collections, specially provided by the act of March 17, 1871, to compel the collection of the taxes levied by that act for the payment of the bonds. It is immaterial whether or not an action at law could have been maintained on the bonds against the levee board of district No. 1 after the passage of the act of March 5, 1884.

It is not correct, as a legal proposition, that the abolishment of the board of levee district No. 1 stopped the running of the statute of limitations against an action on the bonds. When the statute once commences to run, its operation is not

suspended by any subsequent disability or other impediment
not interposed by the statute.  *McCoy* v. *Nichols,* 4 How.
(Miss.), 31; *Abbott* v. *McElroy,* 10 Smed. & M., 100; *Granger*
v. *Granger,* 6 Ohio, 17; *Northrop* v. *Morgan,* 16 Oregon, 193;
*Daniel* v. *Day,* 51 Ala., 433; *Keyser's Appeal,* 124 Penn. St.,
91; *Jones* v. *Lemon,* 26 W. Va., 629; *Tynan* v. *Walker,* 35
Cal., 634.

A judgment on the bonds, as a preliminary to the mandamus
proceedings, was expressly dispensed by the act of March 17,
1871, so that the bonds stood precisely, so far as the special
mandamus proceeding is concerned, as if they had been placed
in the form of judgments at law, and it thus appears that there
has been, at all times, a full and complete remedy at law for
the collections of these taxes, and against which the statute
of limitations has run.

The case, as it stands on the averments of the bill and the
demurrers, against the Delta & Pine Land Company, the Louis-
ville, New Orleans & Texas Railroad Company, Swan, and Bur-
roughs, is essentially distinct from the case stated in the bill
against the state.

It may be said that an accounting should be had against the
state in respect to lands now held by the state for sale, upon
which there are uncollected district No. 1 taxes.  But the atti-
tude of the other appellees in respect to these lands is entirely
different.  These appellees are the owners of a large quantity
of the lands involved in this controversy, standing in no trust
relations to the appellants.  The appellants present, by their
bill, a legal demand against the levee board of district No. 1,
in the form of the bonds of the district.  With these bonds
these appellees have no concern whatever.  The only demand
made by the bill against these appellees, or their lands, is for
the taxes levied by the act of March 17, 1871.  This involves
no suggestion of a trust.  All taxes are a charge *in rem,* but
this does not give a court of equity the jurisdiction to collect
taxes.  The owner of lands derelict for taxes does not stand in

any trust relations to these bondholders. The collection of a tax is purely a legal demand enforceable at law and not within the jurisdiction of a court of equity according to the well-settled doctrine on the subject.

The proceeding by mandamus is the proper remedy for the collection of taxes and not by a bill in equity. But if this proceeding is a concurrent remedy, it is barred by the statute of limitations.

There can be no reason or authority that would justify the court in collecting the taxes claimed by the appellants against these appellees for the payment of their bonds, which are clearly barred by the statutes of limitation.

*Mayes & Harris,* for appellee, the Louisville, New Orleans & Texas Railway Company.

This brief is not intended to be a full presentation of the entire case in behalf of the railway company, but is designed only to supplement the briefs herein filed by the attorneys for other appellees.

The bill in this case is long and involved, but susceptible of brief expression. It is filed for the enforcement of an alleged trust. The controlling averments are, in brief, that by the act of February 17, 1871, creating the levee board district No. 1, a trust was created for the purpose of paying the liabilities of the board, especialy its bonds, the subjects of such trust being—

1. The assessments imposed by the act; and,

2. The lands themselves, in so far as they should be acquired by the board at delinquent tax sales.

Complainants are averred to be holders of unpaid bonds and coupons, and the relief sought is the collection of unpaid levee taxes by sales of the lands alleged to be subject thereto.

Furthermore, it is averred that by the act of 1871 the levee board was constituted a trustee for the administration of the alleged trust, succeeded, under the act of April 11, 1876, by

the state itself on, and because of, the abolition of the levee board.

*First*—We submit that the bill, in this aspect, must fail because its own statements, taken in connection with the statutes relied upon, show that no such trust existed.

*Secondly*—If the bill be considered as filed to enforce a lien, by way of subrogation of the complainant to the rights of the levee board, it still must fail, because other remedies were provided by the statute which were exclusive, and do not include the remedy herein adopted.

1. The bill shows on its face that no such trust existed. Sections 8 and 10 are the controlling portions of the act on this point, and this court has already expressly decided that the lands were not pledged to creditors in any way, although the taxes were. *Shotwell* v. *Louisville, etc., Ry. Co.,* 69 Miss., 541, 556. As to the uncollected taxes alleged by the bill to be a subject of the trust, such claim is directly in the teeth of the statute. The statute is the contract, and by its provisions the right of the complainant must be measured. That statute declares that the special fund and trust created therein shall be composed of the taxes "as they are from time to time collected." It is not until collection that the trust character attaches. It is not the mere chose in action which constituted the trust, but the moneys actually collected, as they are from time to time received. But it is not in respect to such money so collected that the bill is filed. It asserts a trust, first, in the lands, and, second, in the uncollected taxes. Wherefore, it must fail, and the decree of the chancellor below, on demurrer, should be sustained.

2. Considering the bill now as an effort, by some sort of equitable subrogation of complainant to the right of the levee board, to assert the lien created in favor of the board by the statute, we contend the statute itself makes ample provision for the collection of the taxes. Sections 8 and 12 provide for their collection in the usual and ordinary course, annually, on or

before the first of September in each year, and for a sale of delinquent lands in January of each year, for delinquency.

Section 10 provides that should any of such assessments be not collected as provided in the statute, the holder of any of the due and unpaid bonds or obligations may apply to the judge of the circuit court, or of the chancery court, of any district included in the levee district, for a mandamus requiring the board to have collected and paid over such delinquent taxes; or, else, instead of such mandamus, the said judges might, in their discretion, appoint one or more special commissioners, with authority to collect and pay over.

This is a full and detailed scheme of collection. It covers the entire ground, and is exclusive of any other method. 2 Desty on Tax., 746; *Board* v. *Old Dominion Co.,* 18 W. Va., 441; *Raynesford* v. *Phelps,* 43 Mich., 347; *Crapo* v. *Stetson,* 8 Met., 347; *Shaw* v. *Pickett,* 26 Vt., 482; *Camden* v. *Allen,* 26 N. J. Law., 399; *Packard* v. *Tisdale,* 50 Me., 376; *Carondelet* v. *Picot,* 38 Mo., 125.

This bill, not being the statutory proceeding indicated, for that reason cannot be maintained. By way of emphasizing this point, we submit that this is not a mere question of practice; it is not a mere question of supplementing the remedy provided by the legislature by one more speedy and adequate, but here it is a question of maintaining a bill directly in the teeth of the legislative declaration by placing a jurisdiction different from that clearly marked in the statute. Since the statute provides that the proceeding inaugurated by the creditor shall be before a judge of some district included in the levee district, the jurisdiction is limited territorially. Wherefore, if it were admissible to file a bill in chancery instead of a mandamus, that bill must be filed in the chancery court of some district included within the levee district. The reason is obvious. The taxes are local assessments; the valuations of the lands to be taxed are not fixed absolutely by the statute, but are ascertained by classification according to their condition. Many important considera-

tions come into the ascertainment of these valuations, which necessitate a close local connection between the court and its field of labor. The territorial jurisdiction is not only fixed by statute, but is, in itself, important; the holders of these bonds took them *cum onere,* and surrendered the usual right to appeal to any courts outside of the jurisdiction indicated.

It may be said that the act of 1871 was repealed by subsequent legislation, and, therefore, the statutory method was swept away, but such position is untenable because, if the subsequent legislation of the state is to be regarded in any particular as violative of the constitutional rights of the complainant, it must be disregarded *in toto.* The repealing statutes are either constitutional and valid, or else they are unconstitutional and void. If the former, the power to collect by any process is revoked; if the latter, the bill still cannot be maintained, because the power to collect must be exercised in the manner originally defined. An unconstitutional attempt to repeal an act which is a contract cannot have the effect to enlarge the rights and remedies of the complainants, and confer upon them powers of collection which they never before enjoyed.

Moreover, the statutory proceeding could have been inaugurated by the complainant under sec. 10 of the act of 1871, at any time. The effect of the act of 1876 was simply to substitute the state treasurer and the auditor of public accounts for the old levee board, as members of the corporation (*Hemingway* v. *Stancell,* 106 U. S., 399), and the theory of the bill itself is that by the act of April 11, 1876, and by the act of March 5, 1884, the state became trustee of these funds. On the statute in lieu of a mandamus against the board, could have been inaugurated, either against the auditor and treasurer, or, else, against the state as trustee, and in such proceeding the commissioners contemplated to be appointed by the statute in lieu of a mandamus against the board, could

have been appointed just as well as the present suit can be maintained.

Another point of view: By the act of 1884 the power to collect these taxes was terminated; the unsold and unsubjected lands were freed from incumbrances of uncollected taxes, and the right of the legislature so to free the same was part of the complainant's contract. It was nominated in the bond. Section 10 of the act of 1871 provides that "said charges and assessments . . . shall not be subject to repeal, alteration, or suspension during the time for which they are fixed, levied, and made as aforesaid, until all the bonds, obligations, and liabilities of such board shall be paid and discharged."

We maintain that after the 17th day of February, 1883, which is the very day referred to in the act of 1884, the general power of the legislature, which existed under and by virtue of article 5, page 292, of the code of 1857 (which was in force at the time when the act of 1871 was passed), was resumed by express provision of the charter of the board itself. As quoted above from sec. 10, the surrender of the right to repeal, alter, or suspend was made only during the time for which the taxes were fixed, and that time expired in 1883. *Pearsall* v. *Great Northern Ry.,* 161 U. S.; *Shotwell* v. *Ry. Co.,* 69 Miss., 541.

Therefore, when the act of 1884 abolished the levee board, nothing was done but what the legislature had expressly reserved the power to do under the charter of the levee board itself, which charter constituted a part of the contract of the bondholders.

Another point of view: The repealing act of 1884 was constitutional for the reasons set forth in the case of *Meriwether* v. *Garrett,* 102 U. S., 472, and *Wolfe* v. *New Orleans,* 103 U. S., 358. Those cases properly analyzed establish the following propositions: First, if, in a case like the one at bar, the repealing act destroys the governmental machinery by which the taxes imposed by the statute repealed are to be collected,

the courts cannot undertake to supply that machinery; but, secondly, if the repealing acts leave the collecting governmental machinery intact, the courts can compel that machinery to act, notwithstanding the prohibition of the repealing statute.

In other words, if the collecting officers are left in existence, the courts can compel them to act, notwithstanding the state prohibition, under the contract clause of the United States constitution, but the collection of taxes by the direct agency of the courts themselves is not the exercise of a judicial function; the court has no machinery of its own with which to collect taxes, and can invent none.

Now, just what the act of 1884 did, was to abolish the collection machinery provided for by the act of 1871, and the amendatory act of 1876. Under such condition it is not a judicial function to interfere and undertake to collect the taxes, but the appeal of the bondholders, if any wrong has been done to them, must be to the legislature.

The conclusion of the foregoing observations, diverse as they are, is this: Complainant is involved in an unavoidable dilemma. The act of 1884 was either unconstitutional or it was not. If it was unconstitutional, then it was competent for the bondholders to disregard it, and proceed by mandamus, or otherwise, by some form of judicial remedy; and because they failed so to do, their right of action had long been barred when this bill was filed. If, on the other hand, it was constitutional, as in the Memphis case a similar act was declared to be, then the governmental machinery, the tax levying and the tax collecting power alike, was all destroyed, and there is nothing on which a decree of this court can act.

As to the questions of exemption of the statute of limitations, etc., we adopt the briefs of counsel associated for the other appellees.

The brief of *Yerger & Percy,* for the appellee, the Louisville, New Orleans & Texas Railway Company, submitted on the

former hearing of the case, a synopsis of which is reported in 66 Miss., 304, was also submitted on the second hearing.

*McWillie & Thompson,* for the appellees, Burroughs and Swan.

From the dates of maturity the limitation began to run against the holders of the bonds and coupons, and it has never been waived in any respect. *Prima facie,* therefore, every bond and coupon, considered as a purely legal obligation, was barred before the bill was filed, and the burden is on the complainant to show some rule of law, or good ground, upon which they may claim some statutory interruption in the running of the statute. At first blush, the very bringing of this suit ought to be an answer to any such contentions, for, if the complainants may bring this bill, they could have sued in the same way many years ago.

Their contention is, that because of the act of 1884, which abolished forever the levee board of district No. 1, as a corporation, there was no one *in esse* capable of being sued upon the contracts of said board, and that, by operation of law, all statutes of limitation as to said contracts became imperative, and that since the act of 1884 there has been no one *in esse* capable of being sued. Complainants seem to have found no difficulty in bringing their suit, even at this late day. Could they have not proceeded in the same way earlier? The law of limitation applied to their equitable as well as their legal rights.

No rule of law is more definitely settled than this: When the statute of limitation begins to run, nothing can ever interrupt it, and no subsequently accruing disabilities affect it. It is true that where there is no person to be sued at the time the right of action accrued, no laches can be imputed from the failure to sue at law, and in such case the statute would be interrupted from sheer necessity, unless the party had it in his power to save the interruption. But that is not the case here, for the complainants could have exhibited their bill in

the assertion of their equitable right at any time after the passage of the act of March 5, 1884, or a bill somewhat similar in character, to administer the alleged trust, and certainly before the passage of that act there was no impediment in their way. The disability must exist at the time the action accrues in order to prevent the statute from running, and after it has once commenced to run, no disability will interrupt it. *McDonald* v. *Hovey,* 110 U. S., 619; *Hogan* v. *Keetry,* 94 Ind., 733; *Harris* v. *McGowan,* 99 *Ib.,* 161; *Champion* v. *Gayce,* 54 Miss., 695; *Jennings* v. *Love,* 24 Miss., 249, 255; *Pollard* v. *Eckford,* 50 Miss., 631; *Dowell* v. *Weber,* 2 Smed. & M., 452.

The state took the lands sold to levee board No. 1, therefore, for administration, and became the owners, but may have been, nevertheless, liable to be proceeded against as in *Gibbs* v. *Green,* 54 Miss., 592, and the bondholders could have had the lands sold under appropriate proceedings in the chancery court for the payment of state, county, and levee taxes, if the law as to the sale of the lands was not effectuated. If the contention of opposing counsel be true, the bondholders would never be barred in their efforts to reach lands sold to the levee board district No. 1, and could wait indefinitely, and in their bill in this case must fail because there is no one yet to sue. But the state became, practically, the levee board, and held the lands for sale under statutes exceedingly beneficial to the bondholders, all of which were constitutional, as held in *Shotwell* v. *Louisville, etc., Ry. Co.,* 69 Miss., 541. Indeed, it was decided in that case that the state's quitclaim under the act of March 12, 1888, to the railway company, prevailed over a subsequent deed from the auditor conveying lands once held by the levee board of district No. 1, and the reason announced was that the levee lands so held were not a trust fund under the act of 1871. The trust fund was "the charges and assessments." That could not be impaired, but it was competent for the state to change the officials to administer the trust, and to divest the title of the lands as to

the levee board and vest it in itself in the way in which it was done by the thirteenth section of the act of April 1, 1876. As to all the lands of the levee board held by the state under the act of 1876, the complainant has no redress. They have been sold, and deeds have been made to the purchaser under the decree in *Gibbs* v. *Green*, by virtue of the act of March 2, 1888. If any lands remain undisposed of the complainants can secure them under the existing laws to-day if any rights remain to them in the premises, and no suit for that purpose is maintainable. As against complainants, the purchasers of land under decree in *Gibbs* v. *Green* have the better right. Nor is there any liability for an accounting on the part of the state. It appears to us that the decision in the case of *Shotwell* v. *Louisville, etc., Ry. Co., supra,* is conclusive of this case on its merits, without reference to the statute of limitations. It vindicates and approves the very legislation complained of in this proceeding. If complainants did not get the benefits of the legislation, other bondholders did, and the taxes collected were righteously applied to the payment of the debts of the levee district.

Lands held by the levee board were "not pledged to creditors as were the taxes, and there was no declaration that the provision on this subject was irrepealable, and it was repealable by the legislature at pleasure, by virtue of the right of repeal of any charter, reserved to the legislature by the last section of art. 5, p. 292, of the code of 1857, then in force." *Columbus Banking Co.* v. *Bank*, 73 Miss., 96. But the lands in the hands of the board were burdened with state and county taxes, which it could never pay, and these were given to the creditors of the board under the laws of which complaint is made. There could be no controversy, therefore, between the complainants and the state as to the lands, whether disposed of or not. If sold, the creditors of the board got all the benefit; if not sold, they can be purchased with levee bonds. They were due at a fixed time, and the lands were not pledged for their payment.

Nor can the complainants plant themselves on the tax due March, 1883, as a reason for saving the bar. While the statute was running, or had run against their debt, they could not assert that the tax levied was so far a special trust as to extend the life of their bonds. The completion of the period of limitation defeated and extinguished the right as well as the remedy. Code 1880, § 2685; 60 Miss., 117. There being no debt, there could be no remedy for its payment, and even if, at the institution of this suit, the mere right to collect the tax referred to was not barred, it could not be practically asserted. That right was limited to the board's obligations; and if, in contemplation of law, there were no such obligations when this suit was brought, it cannot be maintained in any court for the mere purpose of collecting the tax. The proceeding would be vain and useless. In the case of *Washington* v. *Soria,* 73 Miss., 665, this court held that the statute of limitations of six years ran against the installments of purchase money due for lands, even where notes had not been given for it, and no greater rights can be claimed in this suit than the power to institute proceedings within six years after maturity of the bonds and detached coupons. *Clark* v. *Iowa City,* 20 Wall., 583.

The limitation of ten years applicable to proceedings for relief in case of the existence of a trust not cognizable by the common law courts, is not controlling in this case. If it is, then a proceeding to foreclose a mortgage may be brought at any time within ten years, although the note evidencing the mortgage debt may be barred by the six years' statute, for, under § 2667 of the same code, proceedings to enforce any lien given by law to secure the payment of any sum of money specified in any writing, and those to enforce mortgages and deeds of trust, are alike barred whenever the debt evidenced by the writing is barred. If the appellants have any lien upon the lands in suit, it is one given by the law of 1871. If they have any debt, it is one specified in the writings in suit, viz., their No. 1 levee bonds. *McNair* v. *Stanton,* 57 Miss., 298.

If it be contended that the act of 1884 repealed the levee law and abolished the board, and, therefore, that the bill was maintainable, the answer is obvious. If the law was constitutional in all of its parts, surely no attack can be made upon it now. If unconstitutional now, it was unconstitutional then, in so far as it sought to abrogate the tax, and was not in complainant's way. When a contract is made with a municipal corporation on faith that taxes will be levied, legislation modifying the taxing power so as to injure the security of the debt is within the inhibition of the constitution of the United States. *Nelson* v. *St. Martin's Parish,* 111 U. S., 716. This case is also an apt authority in our favor upon the third ground of demurrer.

The third ground of demurrer applies forcibly to this peculiar proceeding. The act of 1871 expired March 17, 1883, and we think the remedy by mandamus, provided by sec. 10 of the act, expired with it. That remedy was exclusive of all others looking to the collection of the tax levied by the statute, and, that gone, the complainants are without redress. Nor does this conclusion work a hardship. The complication grows out of the laches of the bondholders themselves. With what show of reason can the bondholders now invoke a chancery court outside of the district to do that which could annually and certainly have been done promptly after the passage of the abatement act of 1875?

If the board was out of existence, or refused to act, commissioners could have been appointed, and could have collected the tax not paid, because they could have been clothed with all the necessary power so to do.

There can be no doubt that had the complainants followed the remedy expressly provided, the coupons and bonds would all have been long since discharged, and the question, thus considered, would be reduced to this: Can the complainants, in view of a failure to assert a right given by the very law under which their bonds were issued, and which, necessarily, became part

of their bonds, now invade the precincts of the chancery court of Hinds county in the assertion of what is claimed to be a right arising at common law, based on the bonds as a purely legal obligation? The statement of the question is to answer it.

The liquidating levee taxes were not suspended on lands purchased for, or vested in, the levee board of district No. 1, and such lands are not designated nor described in the bill. It was the duty of the levee board district No. 1 to pay the liquidating levee taxes on all its lands, or they were salable under the liquidating levee law.

Under the levee law of 1858, more than a million dollars of debt has accrued, and this was secured by the taxes levied by that act, which had been, by law, suspended during the war, upon the condition that the several taxes were to bear eight per centum interest. For the payment of the debt it may well be said there was a fixed lien on every acre of land in the general levee district, equal to its market value, to be provided for or paid. On the terms stated in the liquidating levee law, this debt was renewed and distributed into five annual installments, and the existing tax as to the liquidating levee bonds was largely reduced, so that, if promptly paid, the debt itself was expected to be discharged in five years. But the law was not compulsory, and the rights of those who did not accept it were left unaffected. It was necessary to make the scheme effective in every way, or existing creditors would not accept it. If the lands sold for nonpayment of liquidating levee taxes were subjected to any other lien, the resources of the board would be largely consumed in the payment of such liens, and, if not paid, they would necessarily be impaired, and those who paid all their taxes would be subjected to additional burdens they should not bear. The problem of paying this debt would have been largely shifted from the lands to the individual owners of other lands who had really discharged their obligations. To meet this difficulty, and make the lands in the district discharge the burden was well understood at the time, and, we think fully effectuated.

The brief of *Nugent & McWillie,* for appellees, Burroughs and Swan, submitted on the former hearing of the case, a synopsis of which is reported in 66 Miss., 304, was also submitted on the second hearing.

Argued orally by *Marcellus Green,* for the appellants, and by *Frank Johnston, Edward Mayes,* and *T. A. McWillie,* for the appellees.

WILLIAMSON, Special J., delivered the opinion of the court.

The proper decision of the questions raised by the demurrers in this case involves, necessarily, the construction of the act of March 17, 1871, creating the levee board No. 1, under which act of the legislature the levee bonds sued on were issued, and the construction of the act passed in 1867, known as the "Liquidating Levee Act;" also the construction of the many other acts of the legislature in dealing with the subject of levee taxes and the sales of lands for levee taxes, passed subsequently to the two acts referred to. The object of appellants' bill is to compel the administration of a trust for the payment of the bonds of the levee board No. 1 held by them, which trust the bill charges has been wasted and mismanaged, under the administration of the trustee, by void sales of the trust property under acts of the legislature, by failure to demand taxes due the trust estate, and by conveying away property belonging to the trust estate without enforcing the collection of the purchase money due the estate. The demurrers to the bill plead the six, seven, and ten years statutes of limitations in bar of appellants' right to maintain the suit. They also raise the question of the jurisdiction of a court of equity to entertain the bill and grant the relief asked for. Numerous other grounds are assigned against the sufficiency of the bill.

Let us first examine the provisions of the act of March 17, 1871, to see what constitutes the trust fund to which the holders of the No. 1 levee bonds may look for their payment. After

creating the corporation, declaring its object and purposes, providing for the organization of the levee board, the selection of its officers and members, and prescribing their powers and duties, the act fixes the boundaries of the Mississippi levee district No. 1, and then uses this language at the close of sec. 7: "And the lands embraced and included in said levee district shall be, and are hereby declared to be, and are made chargeable and liable, as hereinafter declared, for all the costs, outlays, charges and expenses to be incurred or made for the levees, works, and improvements provided for and contemplated by this act, or in maintaining the same." Sec. 8 contains the following language: "That for the purpose of building, repairing, constructing and maintaining the levees and works aforesaid, and for carrying into effect the purposes of this act, a uniform charge and assessment of two per centum per annum on the value of every acre of unimproved and improved land and cultivated lands in said levee district is hereby fixed, levied, and made, which shall continue for twelve successive years from the date of this act, and shall be due and payable the first day of September, in each year, for said period." The remainder of the section provides for fixing the value of the several kinds of land in the several counties embraced in the district. Sec. 9 provides for the issuance and sale of $1,000,000 of bonds, to enable the board of levee commissioners to carry out the purposes of the act. Sec. 10 provides: "That the charges and assessments levied and made as aforesaid by this act shall be, as they are from time to time collected, and they are hereby constituted a special fund and trust, to be used by said board, first, in payment of any bonds that may be sold or used as before provided under this act, and of any money that may be borrowed under its provisions; secondly, for the payment of any other debts and liabilities of said board, and when collected the same shall be paid into the treasury of said board for the purposes aforesaid." It is clear, from the language used in sec. 7, that the lands in the district

were made chargeable and liable for costs, outlays, and ex-
penses as thereinafter declared—that is, to the extent and in
the manner provided in the sections which followed. By sec.
8 the charges and assessments levied on the lands were fixed
at 2 per centum per annum for a period of twelve years on the
value of each acre of land in the district. To this extent only
were the lands in the district made liable for the costs, outlays,
and expenses mentioned in sec. 7. The charges and assessments
levied and made by sec. 8 of the act are the charges and assess-
ments which, by sec. 8, are, as they are from time to time col-
lected, constituted a special fund and trust, to be used by the
board to pay bonds, borrowed money, etc. Until they were
collected, the charges and assessments were not a trust fund,
but existed only as a tax levied on the land; a charge against
it, which the levee board had a right to collect under the law,
and which the creditors of the board had a right under the
law to compel it to collect. When collected, the taxes became
a fund which the act declared should be a trust fund, and
pledged to creditors. *Shotwell* v. *Louisville, etc., Ry. Co.,* 69
Miss., 542 (11 So. Rep., 455). The lands struck off to the
treasurer at a sale for levee taxes, and not redeemed, were de-
clared by sec. 13 of the act to be a part of the levee fund, subject
to sale, as the board should order, but this vesting in the board
of the title to the lands purchased for taxes was simply a means
to secure the collection of the charges and assessments imposed
by sec. 8 of the act, which charges and assessments, when col-
lected, constituted the trust for the benefit of creditors. The
lands themselves were not the trust fund, nor a part of the trust
fund, that was by the act pledged to the creditors of the board.
The lands were held by the board, charged with state and county
taxes, which had to be accounted for with interest, their col-
lection being suspended only during the time the No. 1 board
held the lands. Not only were these lands held by the board
subject to the suspended state and county taxes, but they were
subject also to accrued and accruing liquidating levee taxes,

which must be paid by the No. 1 board during its holding. Only state and county taxes, not liquidating levee taxes, were suspended. The right to have collected No. 1 levee taxes due on lands purchased by the board at tax sales, and held by it, after the expiration of the period of redemption expired, is the full extent of the rights and interests the creditors of the No. 1 levee board had in the lands.

The subject-matter of this suit being a trust, it comes especially within the jurisdiction of a court of equity, and we think the chancery court of Hinds county has territorial juris diction, since the state and its officers are sued, and the Delta & Pine Land Company, one of the defendants, is domiciled at Jackson. *Gibbs* v. *Green,* 54 Miss., 592. But the chancery court of Hinds county has no jurisdiction to assess and collect taxes in levee district No. 1. The legislature provided the scheme for collecting the taxes in the very act which imposed them, and jurisdiction over this subject was given the courts in that district. If the proper officers in the several counties embraced in levee district No. 1 have not assessed and collected the levee taxes imposed by the act of 1871 on any of the lands therein, or have failed to sell any of the lands, when delinquent, at the time and within the period required by said act, the chancery court of Hinds county is without jurisdiction to have said taxes assessed and collected by sale of the lands or otherwise. If the Hinds county chancery court had jurisdiction to assess and collect said taxes, the relief could not be granted in this proceeding. Complainants' right to apply to the court, and compel the collection of the taxes, is provided for in section 10 of the act of 1871. The remedy provided was either mandamus against the levee board to have the taxes collected, or the appointment of special commissioners by the court, with full powers to assess, collect, and pay over the taxes. The six years statute of limitations bars these remedies. It may be urged against this that the act of 1884 abolished the levee board, and repealed the act of 1871, so that there was no one to sue. We

reply that this provision was a part of complainants' contract. The holders of the levee bonds could not enjoy the benefit of the trust fund without the means of collecting it, hence the attempt of the legislature to repeal the only remedy for compelling collection of the taxes was tantamount to a repeal of that part of the act which imposed the charges and assessments upon the lands, and was therefore null and void. The act of 1884 was no obstacle to complainants' right to apply to the courts of the district for a speedy enforcement of the remedy, guaranteed to them by the very act and contract under which their bonds were issued. There was always a trustee to be proceeded against, and the courts were open. The levee board, the auditor and treasurer of the state, and the state itself were successively trustees, and could have been proceeded against. The right to sue for trust funds is controlled by the ten years statute of limitations, and as against all the lands held by defendants the Delta & Pine Land Company, the Louisville, New Orleans & Texas Railway Company, N. T. Burroughs, and other purchasers holding and claiming in their own right, complainants are barred of their right to sue on all bonds which fell due ten years or more prior to the filing of this suit, but on all bonds which fell due within the ten years suit may be maintained. As to No. 1 levee taxes due on all lands held by the state at the time this suit was filed, which had been sold to the state for district No. 1 taxes, in whole or in part, and as to No. 1 levee taxes due on all the lands held by the state at that time, title to which had been transferred to the state under operation of the act of 1876, and as to any taxes, moneys, or funds that may, at that time, have been in the state treasury to the credit of district No. 1 levee board, or that belonged to it, the state was trustee in possession, and must account to the *cestui que trust* for the fund; and as to these matters the appellants are entitled to report from the trustee, and a discovery as to the true amount of the trust estate on hand.

Such funds collected will be applied to the payment of bonds not barred.

It is alleged in the bill, and earnestly contended in the briefs for appellants, that the lands held by the liquidating levee board under titles acquired at sales for liquidating levee taxes, made in accordance with the provisions of the acts of 1866–67, were subject to the levee taxes of the No. 1 board, levied by the act of March 17, 1871. We cannot assent to this proposition. Under the provision contained in section 13 of the act of 1867, the lands purchased by the liquidating levee board at tax sales, and not redeemed, were not subject to state taxation for levee purposes, or otherwise. During the time they were owned by the liquidating levee board, such lands were exempt from state taxation for levee purposes. This is a most valuable provision in the legislative contract made with the holders of the liquidating levee board, and doubtless was most potential in persuading them to sacrifice a large part of their claims against the old board, and to accept, in lieu thereof, the new bonds for a much less amount. Being a material part of the contract, the legislature was without authority to repeal or modify it; nor did the legislature repeal or modify this clause by any of the provisions of the act of 1871 creating district No. 1. This was the law at the time the act of 1871 was passed and the bonds now sued on were sold. The holders purchased the bonds of the No. 1 board while this exemption was in force, and they took the bonds with full notice that no revenue from this source could be realized for their payment. It was not necessary to specify in the act of 1871 the exemption of lands held by the liquidating levee board from the charges and assessments therein imposed and levied. . Such lands stood exempted by an irrepealable law. It follows that sales of lands embraced in levee district No. 1, legally made to the liquidating levee board for liquidating levee taxes due thereon prior to the act of 1871, and even subsequently thereto, conveyed valid titles to the liquidating levee board; and while held by the liquidating levee

board said lands were not subject to any state, county, or No. 1 levee taxes, and could not be sold therefor. Void sales to the liquidating levee board would, of course, not exempt the lands from state, county, and No. 1 levee taxes while such lands were claimed by the liquidating levee board under such void title; and a legal sale of lands thus held by the liquidating levee board under void titles for levee taxes due the No. 1 board would pass title, and such lands purchased by levee board No. 1, or by the state for it, would be held as a part of the levee fund of the No. 1 board, and to the extent of the taxes due thereon to the No. 1 board would be a trust fund held for the benefit of the holders of district No. 1 bonds.

The sales to the liquidating levee board are not void for the reasons assigned in appellants' bill of complaint, to wit: (1) That they were not sold on the proper day; (2) that bonds were not duly executed by the tax collectors before making the sale; (3) that deeds, as required by law, were not executed by the tax collectors. These irregularities would not avoid the sales to the liquidating levee board. It is not averred in the bill that no liquidating levee taxes were due, nor is it averred that the taxes due were paid before the sale, that no deed of any kind was made, nor that any fundamental or constitutional requirement had been dispensed with in the assessment of the lands, the levy of the taxes, or in the sales for taxes. Besides, the acts of February 10, 1860, the act of April 10, 1873, and the provisions of the code of 1871, were curative statutes in force during the time the titles were held by the liquidating levee board, and perfected the titles, after the expiration of the several limitations fixed in the law, as to all irregularities in the sales.

We do not think the extension by the legislature of the time for the registration of debts, as required in the liquidating levee act, rendered void the bonds issued to pay debts registered within the time fixed; nor would any defective registration, as charged in the bill, avoid the liquidating bonds issued to

pay said debts. The legislature could not abate any taxes legally
due the No. 1 levee board on any of the lands embraced in
levee district No. 1, and any act of the legislature which at-
tempted to abate any such legally due taxes, or to release any
portion of the lands embraced in said district by the act of
1871, is unconstitutional, null and void. Hence we hold the
act approved April 11, 1876, being an act to relieve the lower
part of Coahoma county and the counties of DeSoto and Tal-
lahatchie from levee taxes of district No. 1 to be unconstitu-
tional, null and void. and it was the duty of the tax collectors
of levee board No. 1 to have proceeded to collect the levee taxes
due on the lands attempted to be exempted by this act; but if
this was not done, and if the holders of the bonds have stood
by, and have not resorted to the remedies prescribed in their
contract to enforce the collection of said taxes, or to have the
lands sold, it is now too late. Complainants were barred of
their rights and remedies to collect said taxes at the time this
proceeding was begun.

The abatement act of 1875 was null and void in so far as it
undertook to abate any taxes legally due levee board No. 1.
*The levee taxes legally due the No. 1 levee board on any lands
which had been legally sold to the No. 1 board or to the state
after the law required the title to be made to the state, must
have been paid when said lands were purchased from the state,
else the lands are still liable for such taxes as were legally due
said No. 1 levee board at the time of the purchase.** None of
these levee taxes was abated by the act of 1875; and the acts of
the legislature approved March 14, 1884, and March 2, 1888,
which dealt solely with levee lands held by purchasers under
the decree of the Hinds county chancery court in the case of
*Gibbs* v. *Green,* 54 Miss., 592, did not attempt to abate any
No. 1 levee taxes that may have been due at the time of the
quitclaim of the state's title. The act of 1884 distinctly re-

---

*The sentence in italics is modified in the opinion delivered on suggestion of error.
*Infra,* p. 115.

quired that all state, county, and levee taxes due on the lands up to the date of the execution of the quitclaim deed should have been paid before the deed could be executed. By section 2 of the act of 1888 it is expressly provided that the deed to be executed by the auditor in pursuance of that act "shall have the effect of passing the title of the state to the lands embraced therein, whensoever the same may have been acquired, and of releasing all taxes, state, county and municipal, which may have accrued prior to the date of the purchase from said commissioners, notwithstanding any error or miscalculation by the auditor of the amount of taxes to be paid under the provisions of this section, and no such error or miscalculation shall be held to invalidate such conveyance or impair the effect hereinbefore declared, but the land conveyed shall, nevertheless, be liable for any deficiency in the amount stated or demanded." It will be perceived that the lands were relieved only from state, county and municipal taxes which may have accrued prior to the date of the purchase from the commissioners. No clause in the act undertakes to release the lands from levee taxes. The law required levee taxes legally due the No. 1 board to be paid before a quitclaim could be obtained under either of the acts, and, if any taxes legally due levee board No. 1 were omitted to be collected at the time of making said quitclaims by the auditor, the lands are still liable for them. Now, the bill alleges generally, that these lands were quitclaimed to defendants without collecting the taxes due levee board No. 1, and complains further that for the levee taxes which were paid in the purchase the bonds were accepted instead of requiring cash. We cannot agree with counsel for appellants that it was a violation of the contractual rights of complainants that the act approved March 5, 1884, by its third section, permitted the auditor to receive the bonds and coupons of levee board No. 1 in the redemption of lands sold for nonpayment of its taxes. The very act under which complainants hold their bonds and assert all their rights stipulates, in so many words, that "said bonds or coupons shall

be receivable after maturity, at par, in payment of any charge or assessment fixed, levied or made by this act." If at the time the quitclaims were executed to defendants under the acts of 1884 or 1888, taxes due levee board No. 1 were paid in bonds or coupons issued under the act of 1871, it was a legal payment and satisfaction of said taxes, and the holders of other levee bonds may not complain.

We do not think the bill of complaint is sufficiently specific in some respects. It should more specifically describe the lands claimed by the several defendants against which relief is sought. It should more specifically state the amount of taxes claimed to be due on the lands held and claimed by the several defendants respectively. It should state more specifically what lands were sold to and held by the levee board No. 1. These matters are disclosed by the public records, which are open alike to complainants and defendants, and as to them the bill does not make showing sufficient to call for discovery. If the bill stood confessed in its present shape, no specific relief could be decreed against any particular lands. As we stated above, complainants may properly call upon the state, as trustee in possession, to report and discover any funds on hand at the time of commencing this suit which belonged to the trust estate. It follows, from the views of the court expressed above, that the decree of the lower court sustaining the demurrers of defendants must be affirmed, but the bill will not be dismissed. Leave to amend their bill within ninety days from the filing of mandate in lower court will be granted the complainants, and the cause will be remanded to be proceeded with in accordance with this opinion.

A suggestion of error was filed by *Calhoon & Green,* for appellant, to which the following response was made:

WILLIAMSON, Sp. J., delivered the opinion of the court, responding to the suggestion of error.

We have carefully, and with much painstaking, examined the

suggestions of error filed in this cause, but find nothing that leads us to the conclusion that a rehearing in this cause should be granted. A reargument is therefore denied.

We will, however, modify the language used in one sentence of the former opinion for the purpose of perspicuity and clearness of meaning. This language is used in the former opinion, to wit: "The levee taxes legally due the No. 1 levee board on any lands which had been legally sold to the No. 1 board or to the state after the law required the title to be made to the state, must have been paid when said lands were purchased from the state, else the lands are still liable for such taxes as were legally due said No. 1 levee board' at the time of the purchase." We make that sentence read as follows: "The levee taxes legally due the No. 1 levee board on any lands which had been struck off or sold to the No. 1 levee board, or to the state after the law required the title to be made to the state, must have been paid when said lands were purchased from the state, else the lands are still liable for such taxes as were legally due levee board No. 1 at the time of the purchase."

With this modification we adhere to the former opinion in the case.