### HEMINGWAY v. STANSELL.

1. A board of commissioners, one from each of five counties, having been incorporated by a State statute to construct and maintain levees, with authority to make contracts for the doing of the work, and having made such a contract, and been sued in equity thereon, in the district in which the domicile of the board was established by its act of incorporation, by persons residing out of the district, a subsequent statute of the State abolished the offices of the commissioners, and constituted the treasurer and the auditor of accounts of the State *ex officio* the levee board, with the declared purpose "to substitute the treasurer and auditor in place of the board of levee commissioners now in office;" and a bill of revivor was filed against them by leave of the court. *Held*, that the suit might be prosecuted against the new board, although both the treasurer and the auditor resided out of the district; and that an appeal from a final decree for the complainant might be taken by the treasurer and auditor, describing themselves by their individual names, and as such officers, and as *ex officio* the levee board.

2. A board of commissioners, authorized by statute to make contracts for the building of levees, and to borrow money, issue bonds, and sell and negotiate them in any market, but not at a greater rate of discount than ten per cent, may make a contract for the work at certain prices by the cubic yard, payable in such bonds; and may afterwards amend that contract by inserting "at the rate of ninety cents on the dollar," and issue bonds to the contractors accordingly, upon being satisfied that such was the agreement actually made between the parties; although the work is actually done by sub-contractors for lower prices in cash.

3. A board of levee commissioners made a settlement with contractors employed to do the work on certain levees, by which it paid them a certain sum and took a receipt in full of all demands. The parties afterwards executed an agreement under seal, reciting the settlement and receipt in full of all demands, a complaint of the contractors that injustice had been done them in that settlement, and the desire of the board to do full justice; and stipulating that two engineers, one designated by each party, should measure the work done, and render to the parties an estimate of the amount due to the contractors for such work according to the original contract; that if this should differ from the amount already paid, the difference should be paid or refunded accordingly; and that these two engineers and a third, to be agreed on by them, should be arbitrators for the adjustment of all questions of difference; that, in the adjustment of questions pertaining to the meas-

urement, the contractors should have the privilege of introducing all proper evidence, and the board of rebutting that evidence; and that, before proceeding with the measurement, the contractors should give written notice to the board of the points to be proved and the character of the evidence to be offered. The contractors thereupon gave notice of their intention to introduce proof of several matters, some of which did not concern the measurement; to which the engineer of the board objected; and the arbitration fell through. *Held*, that the settlement and receipt bound the contractors as an accord and satisfaction, and they could not maintain a suit upon the original contract to recover further compensation for the work.

APPEAL from the District Court of the United States for the Northern District of Mississippi.

The facts are stated in the opinion of the court.

*Mr. H. P. Branham* for the appellants.

*Mr. Henry T. Ellett* for the appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

This is an appeal by " William L. Hemingway, Treasurer of the State of Mississippi, and Sylvester Gwinn, Auditor of said State, and *ex officio* the Levee Board of Mississippi District Number One," from a final decree of the District Court of the United States for the Northern District of Mississippi upon a bill in equity for the specific performance of a contract filed in that court on the 23d of February, 1873, by Hiram A. Partee, a citizen of Tennessee, and Jephthah W. Stansell, a citizen of Arkansas, copartners under the name of Partee & Stansell (of whom the appellee is the survivor), against the Levee Board of Mississippi District Number One, and the five persons constituting that board.

By an act of the legislature of the State of Mississippi of March 17, 1871, entitled " An Act to redeem and protect from overflow from the river Mississippi certain bottom lands herein described," this board, consisting of commissioners to be appointed by the supervisors of Tunica and four other counties respectively, was incorporated for the purpose of constructing, repairing, and maintaining levees along a part of the Mississippi River; its domicile was fixed at the county seat of Tunica County, in the Northern District of Mississippi; and it was authorized to appoint a secretary and treasurer, and to let out and contract for the construction of the works, and to issue

negotiable bonds to the amount of $1,000,000, and to sell and negotiate them in any market, but not at a greater rate of discount than ten per cent.

. This suit was brought upon a contract made by the board with the plaintiffs for the construction of certain levees. While it was pending, on the 11th of April, 1876, the legislature of Mississippi passed an act, entitled "An Act to abolish the Levee Board of District Number One and to pay the debts o' said board;" and enacting that the offices of commissioners, secretary, and treasurer of Levee District Number One, as existing under the statute of 1871, be abolished; and that the Auditor of Public Accounts and the Treasurer of the State be constituted and appointed the Levee Board of District Number One, *ex officio*, and discharge all the duties of the Levee Board and of the secretary and treasurer of the same; "it being the intent and purpose of this act to substitute the Auditor of the State and the Treasurer thereof, *ex officio*, as such commissioners, secretary, and treasurer, in place and stead of the Board of Levee Commissioners, secretary, and treasurer of Levee District Number One, now in office;" and that "the auditor and treasurer shall have full power to settle up, under the laws now in force, the unfinished business of the said Levee Board of District Number One, and to pay any outstanding liabilities of the same in such funds as may be applicable to the same."

The defendant thereupon moved to dismiss the bill, because by this statute the levee board had been abolished, and was no longer capable of suing or being sued. The court overruled this motion, and allowed the plaintiffs to file a bill of revivor against the auditor and treasurer (both of whom resided at Jackson in the Southern District of Mississippi), as constituting the Levee Board of District Number One, and, after due pleadings and proofs, entered the final decree against the levee board, from which this appeal is taken.

The appellee now moves to dismiss the appeal, because it is the appeal of Hemingway and Gwinn only, and not of the levee board. But we are of opinion that this motion, and the motion made in the court below to dismiss the bill, are equally groundless.

The statute of 1876, while it abolished the offices of the commissioners who previously constituted the corporation of the levee board, did not dissolve or extinguish the corporation, but merely substituted the State Treasurer and the Auditor of Accounts as the members of that corporation. The suit might therefore be prosecuted against the levee board as a corporation, notwithstanding the change in its members; and a bill of revivor having been allowed to be filed for that purpose, it need not be considered whether any revivor was requisite. The fact that the new members reside in another district is immaterial. A court which has once acquired jurisdiction of a suit does not lose it by a change of domicile of the parties, and may, when the suit is of a nature that survives, bring in the representatives or successors of a party who has died or ceased to exist, without regard to their domicile.

The levee board, being the defendant in the suit, might appeal from the final decree; and the appeal taken by Hemingway and Gwinn, describing themselves not only by their individual names and as treasurer and auditor respectively, but also as *ex officio* the levee board, is the appeal of the board.

It follows that the motion to dismiss the bill because of the passage of the statute of 1876 was rightly denied by the court below; and that the motion to dismiss the appeal must be overruled by this court.

The evidence shows that the board, under the authority conferred by its act of incorporation, advertised for written bids for contracts to do the work; that the plaintiffs made a bid accordingly for the work on certain parts of the levees at specified prices by the cubic yard, payable in bonds at ninety cents to the dollar, or ten per cent discount; that this bid was accepted by the board, and on the 28th of September, 1871, a contract in writing was signed by the parties, by which the plaintiffs agreed to do the work according to the specifications, and to the satisfaction and acceptance of the chief engineer of the board; the board agreed to pay them in bonds the prices named in the bid, four-fifths on monthly estimates by its engineer of the relative value of the work done, and the rest on the final completion of the work; the engineer's acceptance thereof, and estimate of the quantity, character, and value of

the work done, and the plaintiffs' release under seal of all de-
mands arising under the contract; and it was mutually agreed
that the decision of the chief engineer should be final and con-
clusive in any dispute which might arise between the parties
to this contract. It further appears that afterwards, and to
carry out the intention of the parties at the time of signing the
contract, the board, at the plaintiffs' request, caused to be in-
terlined therein, after the word "bonds," the words "at the
rate of ninety cents on the dollar;" and that monthly, during
the progress of the work, four-fifths of the engineer's estimates
of the amount of work done were paid for, at the prices stipu-
lated in the contract, in bonds at that rate.

The board, in its answer and by a cross-bill, contended that
the plaintiffs had been largely overpaid, because the prices
agreed on greatly exceeded the prices at which the work could
be done, and was done by sub-contractors, for cash; and
because the issue of bonds at ninety cents on the dollar in
payment of those prices was in effect a negotiation of the
bonds at a greater rate of discount than ten per cent. But the
board had authority to make contracts, and consequently to
agree upon the compensation for the work; being authorized
to issue bonds, it might issue them directly to the plaintiffs;
and the prices agreed to be paid, as well as the rate at which
the bonds should be taken, corresponded to the original bid
made by the plaintiffs and accepted by the board, as well as to
the terms deliberately adopted in the formal contract. The
suggestion that this course was pursued with the purpose of
fraudulently evading the restriction of the statute is unsup-
ported by proof; and there is no evidence that the funds neces-
sary to repair the levees could have been obtained in any other
manner. This position of the levee board therefore cannot be
maintained, and to that extent the decree of the District Court
must be affirmed.

But the remaining question in the case presents greater diffi-
culties. The facts, as disclosed by the record, appear to us to
be as follows: —

After the plaintiffs had completed the work, W. R. Kirk-
patrick, the chief engineer of the board, who had superintended
the work, made a final estimate of its quantity, character, and

value. The board, being dissatisfied with his estimate, discharged him, and caused the work to be remeasured by B. Mickle, a special engineer (afterwards appointed chief engineer), whose estimates showed a much smaller sum to be due to the plaintiffs. The board thereupon refused to pay the amount due according to Kirkpatrick's estimates, and, after some controversy and negotiation, settled the claim by paying the plaintiffs $47,800, the amount found due by Mickle, and the plaintiffs signed and gave them a receipt in these terms: "Memphis, June 18, 1872. Received of A. R. Howe, Treasurer Mississippi Levee Board District Number One, forty-seven thousand eight hundred dollars on account of work on levee, the same being in full of all demands to date."

The plaintiffs in their bill allege that this receipt was fraudulently and oppressively extorted by the levee board, and was signed by the plaintiffs under protest. But the only evidence to support their allegation is the testimony of Stansell himself, and he on cross-examination admitted that he did not know much about the matter, as Partee attended to the money transactions of the firm; and his testimony is met and controlled by the explicit denial in the answer of the board upon the oath of two of its members, as well as by the recitals of an agreement under seal, made between the board of the first part and the plaintiffs of the second part on the 4th of October, 1872, the important portions of which are as follows: "Whereas said party of the first part have heretofore made full and complete settlement for all work done on said levee by said party of the second part, as evidenced by their receipt acknowledging the same; and said party of the second part do now come forward and complain that injustice was done them in said settlement; and it being the desire of the party of the first part to do full justice to all men, it is hereby agreed that the party of the second part shall designate an engineer, who shall proceed with the chief engineer of this board to measure all work done by said party of the second part on said levee, and render to the parties to this agreement an estimate of the amount due to the party of the second part for such work, according to the contracts entered into for the completion of the same. And it is further agreed that, should said estimate exceed the estimate

made by the special engineer of this board in the month of June, 1872, the party of the first part shall pay to said Partee and Stansell, party of the second part, the amount of such excess, and all the expenses of this measurement shall be borne by the board. But if the said estimate shall be less than the estimate of the said special engineer in June, 1872, then said party of the second part shall refund to said party of the first part the amount of such deficit, and pay all the expenses of this measurement." "It is further agreed that the party of the second part shall designate an engineer, which engineer shall suggest a third engineer, who shall be acceptable to the chief engineer of this board, and the said engineers so selected shall, with the chief engineer of this board, constitute a board of arbitrament for the adjustment of all questions of difference, the agreement of any two to be final. In the adjustment of questions pertaining to this measurement, the contractors shall have the privilege of introducing all proper evidence, oral or written, of notes, profiles, or other evidence; which testimony may be rebutted by the president of the board. This testimony being allowed to give the engineer information as to the fills or any other fact not perceptible to the engineers; to which testimony the engineers shall give such weight as they may think the same entitled to receive."

On the 12th of December, 1872, the parties signed a further agreement, stating that Mickle on the part of the levee board, George B. Fleece on the part of the plaintiffs, and R. L. Cobb, designated by Fleece with the consent of Mickle, constitute the board of arbitrament referred to in the agreement of Oct. 4, 1872; and establishing rules to govern that board in adjusting all matters brought before them, one of which rules was as follows: "Inasmuch as by the terms of said agreement the first party can only rebut the testimony introduced by the second party, it is agreed that the said second party shall, before further proceeding with the measurement, notify the first party in writing what points they expect to prove and the character of the evidence proposed, so that the said first party may be ready with the rebutting evidence."

On the same day, the plaintiffs gave notice in writing to the levee board that they would introduce proof before the board

of arbitration upon twelve different matters, including these three: " 4th. The clause in the contract touching shrinkage, its meaning, and the adjudication of that question by the chief engineer of your board prior to and about simultaneous with the signing of the original contract." " 9th. The damage done to us by the repeated refinishing of work under orders of your engineers." " 11th. The delay of a final estimate, of various payments, and the damage to us arising therefrom."

On the next day, Mickle wrote a letter to Fleece, beginning thus: " In arranging the preliminaries to our organization as a board of arbitrament on the question of difference between the levee board of this district and Messrs. Partee and Stansell, I am notified that claims will be made and testimony offered clearly in contravention of the terms of the agreement from which our authority is to emanate, and as such proceeding would render our decision unsatisfactory and void, I cannot proceed further in the matter unless it is distinctly understood that the following provisions of the contracts and agreements entered into by the said parties, and on which our authority is understood to be based, shall be strictly observed." He proceeded to point out that the agreement of Oct. 4, 1872, did not permit any evidence to be introduced except in relation to the measurement of levees; and also stated the substance of the following provisions in the specifications annexed to the original contract: " Nothing will be paid for settling, but its cost will be included in the price paid for the levee, as estimated up to true grade. If the levee be found deficient in height, slopes, or base, or not to have the full settling on top and slopes, the contractor must go over it immediately and correct all deficiencies, when the engineer in charge will run a test-level over it to see that all is right." " All damage or injury to the work, resulting from flood or other cause, shall be sustained by the contractor until finished and received by the chief engineer; and no work shall be received until fully and completely finished in accordance with the above specifications."

To this letter Fleece immediately replied, contending that the board of arbitrament was already organized, and declining to discuss in advance any point likely to come before it. A

correspondence of six weeks ensued between Mickle and Fleece, in the course of which, after much dispute upon the question whether Cobb had been in due form accepted as one of the arbitrators, Fleece designated him anew in writing. Mickle declined to accept him, Fleece offered Mickle the choice of either of several other persons in Cobb's stead, and the correspondence ended in Mickle's insisting on the objections made in his letter of Dec. 13, 1872, and in the plaintiffs' abandoning the arbitration.

The court below was of opinion that the receipt in full of the 18th of June had been wholly set aside by the agreement of the 4th of October, and that the arbitration under this agreement had failed by the fault of the defendant; and entered a decree for the plaintiffs according to the final estimate of Kirkpatrick.

We cannot concur either in the reasons or in the result. In our view, the effect of the agreement of the 4th of October, 1872, was to recognize that there had been a settlement in full between the parties, of the amount due from the levee board to the plaintiffs, which bound both parties as an accord and satisfaction; and to agree to open that settlement to this extent only: Three engineers, to be appointed as therein provided, should measure the work done by the plantiffs. If their estimate should differ from the estimate of Mickle, according to which the settlement had been made, the difference should be paid by the board or refunded by the plaintiffs. The stipulation that the three engineers should "constitute a board of arbitrament for the adjustment of all questions of difference" was necessarily limited to questions of difference in relation to the subject to be referred to them. If such measurement by the arbitrators should not modify the estimate of work done, or if the arbitration should fail without fault of the levee board, the settlement stood.

The evidence, the substance of which is above recited, satisfies us that the arbitration did not fail by any fault on the part of the levee board, but by reason of the persistent attempts of the plaintiffs, against the steady opposition of the levee board, to introduce evidence before the board of arbitrament, not limited to the question of measurement, which was the

only matter to be submitted to this board, but touching other matters which had been concluded by the contracts executed and the settlement made between the parties.

The result is, that the decree below must be reversed, and the case remanded with directions to enter a decree

*Dismissing the bill.*