STATE OF MISSISSIPPI *v.* AMOS WOODRUFF ET AL.

1. BOARD OF LEVEE COMMISSIONERS NO. 1. *Successors. Auditor and treasurer. Liability to suit. Laws* 1871, *p.* 37, *ch.* 1. *Laws* 1876, *p.* 174, *ch.* 108.

    The board of levee commissioners of the No. 1 levee district, incorporated, laws 1871, p. 37, ch. 1, was given perpetual succession, with power to sue and be sued, and, by laws 1876, p. 174, ch. 108, abolishing said board, the auditor of public accounts and state treasurer were made the successors of said board and authorized to settle its unfinished business, and became and are liable to be sued as such.

2. SAME. *Suit against the state.*

    The state is and was a proper party to a suit which seeks to enforce a right against the said board of levee commissioners of the No. 1 levee district, of which the auditor of public accounts and the state treasurer are the successors.

3. SAME. *Land commissioner.*

    The state land commissioner, however, is not a proper party to a suit which seeks to enforce a right against the said board, although he has succeeded the auditor in the control of state lands, direct authority to sue him not having been given.

FROM the chancery court of, first district, Hinds county.

HON. ROBERT B. MAYES, Chancellor.

Woodruff and others, appellees, were complainants in the court below; the State of Mississippi, appellant, and others, were defendants there.

For a short history of the litigation see statement of facts in *State* v. *Woodruff,* (this case on a motion), ante 107:

The facts involved on this appeal are fully stated in the opinion of the court.

*J. N. Flowers,* assistant attorney general, for appellant.

*Green & Green,* for appellees.

Argued orally by *J. N. Flowers,* assistant attorney general, for appellant, and by *Marcellus Green,* for appellees.

[The reporter has been unable to find the briefs of counsel, hence a synopsis thereof is not given.]

*Frank Johnston* and *McWillie & Thompson* and *Mayes & Longstreet,* represented their respective clients, defendants in the case, but none of them participated in the argument on this appeal.

ALEXANDER, Special Judge, delivered the opinion of the court.[*]

This case is before us for the fourth time. Strangely enough the single question for decision lay at the threshold of the litigation, and was in fact presented by the demurrer which was the initial pleading of the defendant, the appellant here, although it seems never to have been brought to the notice of the court by the briefs or arguments of counsel, and has not been the subject of express adjudication. This question is, whether the state and her officers, the auditor, treasurer, and land commissioner, can be sued.

The original bill was filed in 1888 by certain holders of levee bonds issued under the act, approved March 17, 1871 (Laws, p. 37), which created and incorporated the board of levee commissioners of the No. 1 levee district. The purpose of the bill is to enforce the trust created by the act for the payment of the bonds. The parties defendant to the bill are the State of Mississippi, the auditor, treasurer, and land commissioner of the state, and also certain corporations claiming lands within the levee district which were charged with a lien for the taxes levied by said act to secure the bonds. After the decision of this

[*] Judges Whitfield and Calhoon recused themselves in this case and J. A. P. Campbell and C. H. Alexander, Esqrs., members of the supreme court bar, were appointed and presided in their places.

court on the last appeal which affirmed the decree overruling the general demurrer to the bill (*State* v. *Woodruff,* 81 Miss., 456), and after the auditor, treasurer and land commissioner had answered, the attorney general filed a motion to withdraw the answers and to dismiss the suit as to the state and its said officers on the ground that the suit was, in effect, one against the state in its sovereign capacity, and as such was not authorized by any statute. The motion was denied. Hence the appeal.

It is not claimed by appellees that the suit was authorized by section 2641, Code 1880 (Code 1892, section 4248), which it is conceded applies only to demands which are subject to audition and allowance by the auditor. Appellees rest their authority to sue the state and said officers on the provisions of the act of 1871, and of the act of 1876 (Laws, p. 174), which modified and in part repealed it. They also contend that the question is no longer an open one in this case; that the opinions of this court on the former appeals are a direct adjudication that the state, the auditor, and treasurer are suable; that the demurrer of the defendants to the bill presented the ground, among others, that the suit could not be brought against the sovereign, and that the overruling of the demurrer was necessarily an adjudication against the demurrants of every point presented by the demurrer. It is also argued that the state and its officers by appearing and defending the suit, have waived their immunity, if it existed.

The position of the attorney general is that the state itself, by the act of 1876, in its sovereign capacity, assumed to administer the trust for the bondholders, and, in the absence of statutory permission cannot be accountable in the courts as trustee; that the right to sue the state and its officers is not expressly conferred by said statutes, and that such right can never be deduced by implication; that the remedy of the bondholders, if they have any, is by appeal to the legislature, which,

it is said, must in this, as in all other cases, be ultimately appealed to for satisfaction of a decree against the state; and finally that the immunity from suit on the part of the state is one which cannot be waived by any of the state officers or by appearing and defending litigation.

The question before us depends for its solution on the construction of the aforesaid acts of 1871 and 1876. Section 1, of the former act incorporated the board of commissioners of levee district No. 1, and provided that they "and their successors in office" might sue and be sued, plead and be impleaded, contract and be contracted with, and have perpetual succession for the purpose designated in the act. This was a general grant of the right to sue in respect to the trust committed to them. This right to sue, and the liability to be sued, were as broad as were their rights and obligations under the act. This provision was not repealed by the act of 1876. That act entitled "An act to abolish the levee board of district No. 1, and to pay the debts of said board." The title is inapt and misleading. The act itself did not abolish, or seek to abolish, the corporation created by the act of 1871. This was expressly so decided in *Hemmingway* v. *Stansell,* 106 U. S., 399, and was assumed as a fact in the opinions in *Green* v. *Gibbs,* 54 Miss., 592; *Shotwell* v. *Ry. Co.,* 69 Miss., 541, and in the former opinion in this case, *Woodruff* v. *State,* 77 Miss., 68. The offices created by the former act were no longer to be filled by the old commissioners, but by the auditor and treasurer who were substituted as their successors. Section 1 declares that the intent and purpose of the act were to substitute these officials as *ex officio* commissioners, secretary and treasurer in place of the levee district. The ultimate purpose, as shown by the title, was the payment of the debts of the board, and section 9 gave the auditor and the treasurer full power to settle up under the laws then in force, the unfinished business of the levee board. These officers were thus made the "successors" of the commissioners within the

meaning of section 1 of the act of 1871, and as such, by virtue
of the express provision of that section, could sue and be sued.
The latter act repealed the former only so far as they were in
conflict. In no other view could the act of 1876, in this re-
spect, be sustained as constitutional. In no other view can the
decisons in *Green* v. *Gibbs, Shotwell* v. *Ry. Co.*, and the for-
mer decision in this case (*Woodruff* v. *State*, 77 Miss., 68), be
approved. In *Green* v. *Gibbs*, it was held that the act of 1876
was not unconstitutional as impairing the remedy of the bond
holders since the state and its officers assumed to administer
the trust. We should, if possible, construe the said act to be
constitutional if it can fairly be done, and any different view
would make it unconstitutional, since it was certainly not com-
petent for the legislature to take away all judicial remedy for
the ascertainment of the rights of the bond holders, and to sub-
stitute therefor a mere right of entreaty to the legislature. As
has been announced in the above decisions the right given the
bondholders to sue for the security provided was more than a
mere statutory right which the state could grant and repeal at
pleasure. It was an essential part of their contract. *Green* v.
*Gibbs* was a suit by the holders of liquidating levee bonds
against the auditor and treasurer, who had been likewise sub-
stituted in place of the commissioners of the liquidating levee
board by an act passed on the same day as that now under con-
sideration (Laws, p. 166). These statutes are similar in their
main provisions, and the two were part of a common scheme to
devolve the duties of liquidating levee commissioner, and of the
board of commissioners of district No. 1 upon the auditor and
treasurer. The right of the holders of the liquidating bonds to
sue the auditor and treasurer was, if not decided, yet distinctly
recognized in *Green* v. *Gibbs*. The officers are declared in that
case to be the successors of the levee commissioners. It further
held that the act of 1876 did not divest the chancery court of
its inherent jurisdiction to administer the trust for the benefit
of the *cestuis que* trust.

It is to be noted that by section 13 of the said kindred act of 1876 an express limitation is placed on actions against the state for the recovery of the lands mentioned in the act. It is thus evident that general immunity from suit on the part of the state's officers was not intended to follow them when acting as successors of the levee commissioners.

The opinion in *Shotwell* v. *Ry. Co.,* is, throughout, a clear and forceful vindicaton of the state against any charge or suspicion of unconstitutionality or illiberality in connection with the remedies which were carefully preserved to the bond holders—a vindication which could itself be hardly vindicated if it should now be held that the state had in fact taken from the bond holders, by the acts of 1876, all judicial remedy against the successors of the commissioners.

In the opinion in this case on the former appeal (77 Miss., 68), we find a clear recognition of the true meaning and import of the former decisions touching the right of the auditor and treasurer to be sued. A portion of the bonds here sued on were held barred by limitation on the ground that the remedy for enforcing the trust was not lost or impaired by the act of 1876. It was there said that there was always a trustee to be proceeded against; that the auditor and treasurer and the state itself, were successfully trustee and could be proceeded against. It would be a strange anomaly if, after holding on that appeal that a part of the bonds were barred because they were trustees to be sued, and a remedy existed for suing them, we should now hold as to the remainder of the bonds that there are no trustees and hence no remedy.

We hold that the right expressly granted by section 10 of the act of 1871 to the commissioners and their successors to sue and be sued was not repealed by the act of 1876, and still exists. This view is not open to the objection that we deduce by implication from the statutes the right to sue the sovereign. On the contrary, to hold that the auditor and treasurer, when

made *ex officio* commissioners carried with them into that position immunity from suit would be to take away by implication a right plainly given to the commissioners and their successors and no where expressly repealed.

Both appellant and appellees, in their arguments and briefs, have assumed that there is a unity of interest between the state and its officers, the auditor and treasurer, and this view is correct. In committing the administration of the trust to said officers the state, as was said in *Shotwell* v. *Ry. Co.,* assumed the management of the trust for the creditors, employing its officials for the purpose. This unity of interest was recognized by the act of 1876 (Laws, p. 166), in fixing a limitation on certain suits against the state itself for the lands mentioned in the act. The state must act through officers, and can only be sued through officials. We, therefore, hold that it was not error to join the state as a party along with the auditor and treasurer, not as having an interest separate and distinct from them, but as being the real trustee, the real successor of the commissioners and administering the trust through these officials as its designated instrumentalities. It is well settled by all the authorities that a suit of this character against officers of the state acting in its behalf will be treated as a suit against the state; or as was said by the United States Supreme Court in a case in which the Governor of a state was sued in his official capacity, "the state itself may be considered a party on the record." *Governor of Georgia* v. *McDrazo,* 1 Pet., 110. If, as we hold, the bringing of the suit against the auditor and treasurer was authorized and the suit is to be treated as one in reality against the state, the naming of a state as a party was merely doing what the law would consider as already done. We are not to be understood as holding that the state or its said officers can be sued as trustees *ex maleficio* or otherwise than as administrators of the trust expressly devolved on them by said act of 1876. Nor do we decide anything as to the nature

and extent of the relief which may be granted. The motion to dismiss is grounded solely on the alleged immunity of these appellants from suit, and not on the ground that any particular form of relief prayed for cannot be granted. The suit in its general aspect is one by *cestuis que trustent* for an adjudication of their rights touching the trust, and as such the trustees are proper parties.

The case as to the land commissioner stands on a different footing, and the motion to dismiss as to him should have been sustained. We presume he was joined as a defendant on the ground that he has, under the present law, succeeded the auditor in the matter of the control and disposition of the lands of the state, and is·therefore a necessary party. But the fact that the state, or its officers are interested in the subject matter of suit, or are necessary to complete relief, is not the test of the right to sue them. Authority to sue must be expressly granted. The duties devolved upon the auditor and treasurer by the act of 1876 were clearly defined, and the administration of the trust and the records thereof were separate from the ordinary and general duties of their respective offices. These duties have never been devolved on the land commissioner. Indeed, before his office was created, the legislature, as far as it could legally do so, had by the act of 1884 (Laws, p. 184), repealed the said acts of 1871 and 1876 and swept away the levee board and abrogated all its functions. This act, while held in this case to be unconstitutional as imparing the rights and remedies of the bondholders, yet manifested the legislative purpose to treat the trust created by the former statutes as at an end. No subsequent legislation made any provisions for administering the trust, and no statute touching the duties of the land commissioner can be construed as making him the successor of the levee commissioners. It is only as such sucessors that we hold the auditor and treasurer subject to suit. If the land commissioner be joined on the theory that he is the legal

successor of the auditor, there woud be no propriety in suing the auditor.

*The order overruling the motion to dismiss as to the land commissioner is reversed, and the bill dismissed as to him. In all other respects the order of the chancellor is affirmed, and cause remanded with leave to the state to answer within sixty days from the filing of the mandate in the lower court.*

Dissenting opinion of CAMPBELL, Special Judge.

Campbell, special judge, dissented, holding that while the state was a trustee, it was not suable as such, not having consented to be sued, without which no suit can be maintained against it; and that the suit against the officers of the state is virtually against the state itself; that, if it be true that while the act of 1876 was in force the auditor and treasurer might have been proceeded against as the successors of the commissioners provided for by the act of 1871, after the repeal of that act in 1884, such suit was not maintainable; that the legislature had the right to alter, amend, or repeal the act of 1871, except that section of it which created the security for creditors, *i. e.*, taxes for twelve years on the lands described in the act; and that the creditors with valid subsisting claims still have their remedy to enforce this security against the lands liable for the taxes or sold and conveyed to the treasurer for nonpayment of the taxes, and not since lawfully disposed of.

Therefore he held that the motion to dismiss the suit as to the state and its officers should have been sustained.