## CUNNINGHAM v. RAILROAD.

(Filed October 31, 1905).

*Issues—Insurance—Loan or Advancement—Subrogation— Real Party in Interest—Assignment of Cause of Action.*

1.  The refusal to submit issues tendered is no ground for exception, where the issues submitted fairly present to the jury the controverted questions of fact.

2.  Where a cause of action is not against the defendant as a common carrier, but for that while the cotton was in a compress building belonging to J. awaiting compression and shipment, it was burned by the negligence of the defendant, a contract, between plaintiff and insurance brokers, to which the insurance companies were not parties, to make an advance "pending collection from the carrier or other bailee" has no application.

3.  The receipt executed by the plaintiffs for "amount of 500 bales of cotton burnt at compress" and their letter acknowledging receipt of cheque "in settlement of our claim for total loss of 500 bales of cotton" and expressing their appreciation of the "promptitude with which the underwriters settled the claim," and their hope that the "underwriters will be recouped a substantial portion of their loss" negative any suggestion of a loan or advancement.

4.  When the insurer against fire has paid the loss sustained, it is subrogated to the rights of the insured and can alone, under section 177 of The Code, as the real party in interest, maintain an action against the wrongdoer, and this right to be subrogated is independent of section 44, chapter 54, Laws 1899, and it is immaterial whether the insured makes an actual assignment or not.

5.  If after knowledge of the payment of the loss by the insurer, the wrongdoer pays the damages sustained by the destruction of the property, such payment will not bar the action of the insurer to recover upon his subrogated right.

6.  Where a cause of action is assignable, either at law or in equity, the assignee is the real party in interest and the equitable owner of any species of property or right of action must prosecute in his own name.

ACTION by Danson Cunningham and others against the Seaboard Air Line Railway, heard by *Judge Walter H. Neal* and a jury, at the September Term, 1905, of the Superior Court of WAKE County.

This action was instituted by the plaintiffs, residents of Liverpool, England, for the recovery of the value of 500 bales of cotton alleged to have been burned by the negligence of the defendant. Two causes of action were set out in the complaint, but at the trial the plaintiffs withdrew all claim by reason of the first cause. The defendant denied that plaintiffs were the owners of the cotton or that the same was burned by its negligence. For a further defense the defendant alleged that the cotton was covered by insurance policies issued by The Standard Marine Insurance Company, Ltd., and The Thames and Mersey Marine Insurance Co., and that the insurance companies had paid to the plaintiffs, on account of said policies, the full value of the cotton. That, by reason of such payment, the companies were subrogated to any and all claim, right or demand which plaintiffs had against it by reason of the destruction of said cotton. That the insurance companies were the real parties in interest and were necessary parties to this action. Thereupon the insurance companies, by leave of the court, came in, made themselves parties plaintiff and filed their complaint, denying that they were subrogated to the rights of the plaintiffs, saying, however, that if the court should be of the contrary opinion, they adopted the complaint. Defendant duly answered the complaint of said insurance companies. At the conclusion of the evidence the insurance companies voluntarily took judgment of nonsuit. His Honor submitted to the jury the following issues: "1. Were the plaintiffs, Cunningham & Hinshaw, the owners of the cotton sued for at the time of the fire? Ans. Yes. 2. Was the cotton covered by policies of insurance, and has such insurance been paid? Ans. Yes. 3. Did such insurance inure to the benefit of the defendant,

and, if so, in what sum? Jury need not answer this issue. 4. ‚Was said cotton burned by the negligence of the defendant, as alleged in the complaint? Ans. No. 5. What was the value of the cotton at the time and place of the ·fire." Judgment was entered upon the verdict, and plaintiffs appealed.

*Armistead Jones & Son* and *J. N. Holding* for the plaintiffs.

*T. B. Womack* and *Day & Bell* for the defendant.

CONNOR, J., after stating the case: The first issue having been found for the plaintiffs, we are brought to a consideration of the plaintiffs' exceptions to His Honor's rulings upon questions pertaining to the second issue. The plaintiffs tendered certain issues which His Honor declined to submit, and they excepted. We think that the issues submitted fairly presented to the jury the controverted questions of fact. Criticism is made of the form of the second issue, but as the jury were practically instructed how to answer it, the form becomes immaterial. The defendant took the depositions of certain persons, including one of the plaintiffs, in Liverpool. Many objections were made to the questions and answers contained in the depositions, the validity of which is dependent upon the conclusion to which we are brought in regard to the materiality of the testimony. The controversy was directed to the proposition, maintained by the defendant, that the cotton was insured and that the loss had been paid in full, before this action was commenced. That, by reason of such payment, the insurers became subrogated to the right of action, if any, which had accrued to the plaintiffs, and that under section 177 of The Code they were the real parties in interest and could alone maintain the action. The depositions tended to show that C. T. Bowring & Co., Ltd., of London, insurance brokers, took out for the plaintiffs policies

of insurance covering the cotton in controversy, in The Standard Marine and Thames Mersey Insurance Companies; that upon the destruction of the cotton the companies were duly notified of and adjusted the loss at the full value, plus ten per cent. for advance in price, as per terms of the policy. There is no serious controversy in respect to these facts. The plaintiffs denied that the loss had been paid, insisting that the amount received by them from the companies was an advance or loan to be repaid from the amount collected from the carrier. It appears that C. T. Bowring & Co., the brokers, gave to the plaintiffs a writing "on the inside but not attached to the policies," in the following words:

"SEASON OF 1902-1903.

C. T. BOWRING & Co., LTD., London.

SEPTEMBER 9, 1902.

*Messrs· Cunningham & Hinshaw:*

In consideration of your acceptance of our policy containing the stipulation 'this policy does not cover any cotton in the custody or control of any land carrier or other bailee,' we agree that in event of loss on such cotton, we will advance to you our proportion of the amount of such loss, pending collection from the carrier, or other bailee, as a loan without interest, the repayment thereof to be conditional upon and only to the extent of the net amount recovered by you from the carrier, and we further agree that we will pay and assume all costs and expenses incurred by you in connection with such recovery."

On November 6, 1902, Bowring & Co. notified the insurance companies of the loss. On November 7, 1902, the company sent to Bowring & Co. the following:

---

CUNNINGHAM v. RAILROAD.

---

"LIVERPOOL, 7 Nov., 1902.

*Messrs. C. T. Bowring & Co., Ltd., London:*

*Cr. with The Standard Marine Insurance Co., Ltd.*

By advance against 500 bales of cotton destroyed by fire at Hamlet, N. C., pending collection of loss from carrier, £2,357.10 cheque herewith."

On November 8, 1902, Bowring & Co. delivered to the Standard Fire Insurance Company the following receipt:

"LONDON, 8 Nov., 1902.

Received from the Standard Marine Insurance Company * * * the sum of two thousand, three hundred and fifty-seven pounds, thirteen shillings, and eight pence, being P. C. of mechanician 8 3-8 and claim account, fire at Hamlet, N. C., as per credit note No. 29216-29218, £2,357.10.8.
C. T. BOWRING & Co., Ltd."

The same transactions were had with The Thames Mersey Marine Insurance Co. The total amount of the loss, plus ten per cent. was £4,715. On November 11, 1902, the plaintiffs executed to Bowring & Co. the following receipt:

"LIVERPOOL, Nov. 11, 1902.

Received from Messrs. C. T. Bowring & Co. * * * the sum of four thousand, seven hundred and fifteen pounds, amount of claim five hundred bales cotton burnt at compress.
CUNNINGHAM & HINSHAW,
per Alfred Collins."

On the same day the plaintiffs sent Bowring & Co. the following letter:

"DEAR SIRS:—We are in receipt of your credit note and cheque in settlement of our claim for total loss of 500 bales of cotton burnt at Hamlet, N. C., and now enclose our receipt. We much appreciate the promptitude with which the underwriters have settled the claim. We sent the bill of lading by last Saturday's mail to our senior in New Orleans to assist in recovering from the carriers and we hope the underwriters will be recouped a substantial portion of their loss. Yours faithfully,

CUNNINGHAM & HINSHAW. * * *"

The only parol evidence bearing upon the construction of the writing was that of W. E. Hargraves, one of the members of the firm of Bowring & Co., who described the manner in which the policies were procured and the loss paid. W. A. Williams, who was underwriter to the Standard Fire Insurance Co., testified regarding the issuance of the policy, saying that the entire transaction was with Bowring & Co., and that the money was paid to them as an advance on the loss. S. T. Cross occupied the same relation to The Thames Mersey Company. Cunningham, one of the plaintiffs, testified that the plaintiffs were suing jointly with the insurance companies and were the real parties in interest. That they had a loan from the insurance companies. That he never saw the policies of insurance or the contract between the insurance companies and Bowring—only the policies between themselves and Bowring.

We have examined this testimony with care. His Honor instructed the jury that "Upon all of the evidence, if the jury shall find it to be true, the cotton was insured and the plaintiffs had been paid in full therefor and the jury will answer the second issue 'yes.'" To this instruction plaintiffs excepted. It will be observed that the plaintiffs' second cause of action, upon which they are demanding judgment, is not against the defendant as a common carrier, but for that

CUNNINGHAM *v.* RAILROAD.

while the cotton was in a cotton compress building belonging to Chas. E. Johnson & Co., at Hamlet, awaiting compression and shipment, it was burned by the negligence of the defendant. Considered from this point of view the contract in regard to making an advance which seems to have been made by Bowring & Co., and to which the insurance companies are not parties, has no application. The agreement, contained in that writing is to make an advance "pending collection from the carrier or other bailee." Here there is no loss sustained while the property is in the possession of the carrier nor is the claim for any loss occurring from any default of the bailee, C. E. Johnson & Co., but against the defendant as an independent wrongdoer. The money could not well be said to have been paid pursuant to an agreement having no application to the manner of loss. We do not perceive any evidence of a loan by the insurance companies to the plaintiffs. Without discussing the construction of the several writings between Bowring & Co. and the insurance companies, it is sufficient to say that the receipt executed by the plaintiffs to Bowring & Co., on November 11, 1902, for four thousand seven hundred and fifteen pounds, "amount of claim of five hundred bales cotton burnt at compress," negatives any suggestion that Bowring & Co. were making a loan or advancement. This is further negatived by the terms of the letter of same date from plaintiffs to Bowring & Co., acknowledging receipt of cheque "in settlement of our claim for total loss of five hundred bales of cotton," etc. They also express their appreciation of the "promptitude. with which the underwriters have settled the claim," and state that they have sent the bill of lading to their senior in New Orleans to assist in recovering from the carriers, expressing the hope that "the underwriters will be recouped a substantial portion of their loss." After a careful examination of the evidence, we concur with His Honor that the plaintiffs were paid in full by the insurers. There are authorities sustaining the claim of

the insured to recover of the carrier or wrongdoer for destruction of property when it is insured, the insurer having made a loan pending the litigation. We see no reason why this may not be done. The wrongdoer is primarily liable. In a case much like this, the court held that the transaction constituted a payment. *Lancaster Mills v. Merchant, etc.,* 14 S. W. 317 (Tenn)., in which a strong opinion is written by *Lurton, J.* The serious question in the appeal is thus presented : What were the rights of the insurers upon payment of the loss, and how is it to be worked out ? This court, in *Insurance Company v. Railroad,* 132 N. C., 75, held that when the insurer had paid the loss, it was subrogated to the rights of the insured and could, under our Code, maintain the action against the wrongdoer. It is said, however, that this decision is based upon section 44, chapter 54, Laws 1899, by which the Standard Form of insurance policy is prescribed, and it is provided that the insurer shall, upon the payment of the loss, be subrogated, etc., and that the insured shall make an assignment to the company. That the statute writes into the policy this provision, and that these policies are not in the form prescribed and contain no such provision. We think that the right of the insurer to be subrogated to the rights of the insured, is independent of our statute. It has been recognized and enforced by many courts long before the passage of the statute, which was merely declaratory of the law. Mr. Sheldon, in his work on Subrogation, section 230, says: "The insurers against fire, of property which has been destroyed by fire, communicated from a locomotive engine, will, upon payment of the loss, be subrogated to the extent of their payments to the remedies of the insured, or the owners of the property insured and destroyed, against the railroad company for the loss." *Chief Justice Shaw,* in *Hall v. Railroad,* 13 Metc. (54 Mass.), 99, with his usual force and clearness, says: "Now, when the owner, who *prima facie* stands to the whole risk, and suffers the whole loss, has engaged another person

to be at that particular risk for him, in whole or in part, the owner and the insurer are, in respect to that ownership, and the risk incident to it, in effect one person, having together the beneficial right to an indemnity provided by law for those who sustain a loss by that particular cause. If, therefore, the owner demands and receives payment of that very loss from the insurer, as he may, by virtue of his contract, there is a manifest equity in transferring the right to indemnity, which he holds for the common benefit, to the assurer. It is one and the same loss, for which he had a claim of indemnity, and he can equitably receive but one satisfaction. So that, if the assured first applies to the railroad company, and receives the damages provided, it diminishes his loss *pro tanto,* by a deduction from and growing out of a legal provision attached to, and intrinsic in the subject insured. The liability of the railroad company is, in legal effect, first and principal, and that of the insurer secondary; not in order of time, but in order of ultimate liability. The assured may first apply to whichever of these parties he pleases; to the railroad company, by his right at law, or to the insurance company, in virtue of his contract. But if he first applies to the railroad company who pay him, he thereby diminishes his loss, by the application of a sum arising out of the subject of the insurance, to-wit: the building insured, and his claim is for the balance. And it follows, as a necessary consequence, that if he first applies to the insurer and receives his whole loss, he holds the claim against the railroad company in trust for the insurers. Where such an equity exists, the party holding the legal right is conscientiously bound to make an assignment in equity to the person entitled to the benefit; and if he fails to do so, the *cestui que trust* may sue in the name of the trustee, and his equitable interest will be protected."

To the same effect is *Monmouth Ins. Co. v. Hautch, etc.,* 21 N. J. Eq., 107. "The payment of a total loss by the in-

surer works an equitable assignment to him of the property and all the remedies which the assured had against the carrier for the recovery of its value." *Mobile & Mont. Railroad v. Jurry,* 111 U. S., 584. This right is not dependent upon, nor does it grow out of any privity of contract. It is a doctrine of equity by which one, who is secondarily liable upon a contract, pays the debt, or discharges the obligation, is substituted to all of the rights of the creditor or person holding the claim against the party primarily liable. It is based upon equitable conceptions of natural justice. It is not dependent upon an actual assignment of the debt or obligation. "The rights acquired by subrogation do not depend upon a written assignment of the claim. Upon payment of the insurer, the insurance company is regarded as an assignee in equity." Clement on Fire Insurance, 368, citing *Ins. Co. v. Railroad, supra,* and many other cases.

Prior to the adoption of our Code of Procedure, the action to enforce the claim of the insured could be prosecuted in a court of law, only in the name of the insured, to the use or for the benefit of the insurer. The insurer has the same right or cause of action which the insured had, and his recovery is limited to the rights of the insured. He could not prosecute an independent cause of action for the wrong done, but only that which accrued to the insured. This right is not based upon any supposed consent of the insured to permit him to sue in his name, it is an absolute right created and conferred upon the payment of the loss. It is held, that if, after knowledge of the payment of the loss by the insurer, the wrongdoer pay the damages sustained by the destruction of the property, such payment will not bar the action of the insurer to recover upon his subrogated right. *Fire Ins. Co. v. Hautch, etc., R. Co., supra,* the Chancellor saying: "If the railroad company had not paid H. his damages, or had paid them to him knowing that he had received the amount insured from the complainants, they are liable to the complainants in a suit at law,

which they have the right to bring in the name of H. without
his consent, to repay them the damage to the amount of the
sum paid by them, and that release by H. would be no de-
fense to such suit." It will be observed that in many of the
cases cited, the suits are brought in the name of the insured,
but it will be noted that they are to the use or for the benefit
of the insurer. In *Hart v. Railroad, supra,* "the insurance
company sues in the name of the plaintiff," etc., in *U. S. v.
Tobacco Co.,* 106 U. S., 403, suit was brought to the use of
the insured. We think the authorities abundantly sustain the
proposition that the right of the insurer upon payment of the
loss is perfect and absolute, and that he is the real party in
interest. It would seem to follow that under section 177 of
our Code, the insurer must bring the action. While it is
true that section 177 does not authorize the assignment of a
thing in action not arising out of contract, it has been held
that where a cause of action is assignable, either at law or in
equity, the assignee is the real party in interest, and that the
equitable owner of any species of property, or right of action
must prosecute in his own name. In *Hart v. Railroad, supra,*
it is said that the right to sue is in the nature of an equitable
assignment, which authorizes the assignee to sue in the name
of the assignor for his own benefit, except under the reformed
Codes of Procedure, which permit any action to be brought
in the name of the real party in interest. Sheldon on Subro-
gation, sec. 230; Clement on Fire Insurance, 369. "The
right of the insurance company is derived from the insured
alone, and can be enforced in his right only. At common law
it must be asserted in the name of the insured, or, under the
modern Codes of Practice, it may be asserted by the insur-
ance company in its own name, when it has paid the full
value of the property insured." *Ibid.* We do not think that
the right to sue in its own name, as sustained by this court in
*Insurance Co. v. Railroad, supra,* is dependent upon the Act
of 1899, nor do we think the language of the Chief Justice

open to that construction. For some, we presume, good reason, the insurance companies voluntarily retired from this litigation, thereby expressly repudiating the suggestion that it was being prosecuted for their benefit. So far. as this record shows, this action is prosecuted by the plaintiffs, for the purpose of recovering the value of the cotton burned for their own benefit. It may be that if they were permitted to recover, the insurers would be entitled to sue them for the amount. However this may be, it is clear that the insurers may also, and, notwithstanding the result of this action, sue the defendant upon their subrogated right. It is an elementary truth that a defendant should not be subjected to two actions by different parties for the same wrong. The case of *Hammond v. Schiff*, 100 N. C., 161, does not present the question decided in this case, nor is that decision in conflict with what is here decided. The wrongdoer being primarily liable, cannot reduce the amount of the plaintiff's recovery by showing that he is insured, nor can the insurance company in an action upon the policy, reduce the recovery by showing that the plaintiff has a cause of action against the wrongdoer. In the last case, the insurer must, in discharge of his contract, pay the loss and obtain indemnity by suing, formerly in the name of the insured, now under our Code, in his own name, the wrongdoer. As said by *Shaw, C. J.,* if the insured has sued the wrongdoer and recovered the whole or a portion of the loss, such recovery will enure to the benefit of the insurer, who, as between the wrongdoer and himself, is primarily liable. In neither case and by no method of procedure, will the injured party be allowed to recover double satisfaction. His right as against either is to be compensated for his loss; to one, he looks by way of damages for the tort; to the other, by way of indemnity upon his contract. To the suggestion that if the plaintiffs are not permitted to recover, the wrongdoer is not required to pay damage sustained by his wrongful act, it is sufficient to say that he is liable to only one party,

primarily to the injured party, by substitution to the party who has indemnified the injured party. If the insurance companies do not choose to prosecute their right, that is no reason why the plaintiffs shall be permitted to recover double satisfaction, or to maintain a cause of action which, by receipt of the money from the insurance company, passed out of them into the company. For reasons based upon the distribution of remedial powers between two jurisdictions, the cause of action which vested in the insurer, was formerly prosecuted in the name of the insured; now, when all such distinctions are abolished, and all rights are enforced, and wrongs redressed in one form of action, by the real party in interest, the insurer may sue, or, to cite the language of the *Chief Justice* in *Insurance Co. v. Railroad, supra,* "whether the insured made an actual assignment or not is immaterial, as the subrogation was complete upon the payment, and the sole right of recovery passed to the company." As showing the opinion prevailing in the profession, we note that other suits based upon payment of loss by an insurance company for property burned, are brought in the name of the company. *Ins. Co. v. Railroad,* 138 N. C., 42.

Being of the opinion that the plaintiffs, not being the real parties in interest, cannot maintain the action, we do not deem it necessary to discuss the exceptions to His Honor's rulings pertaining to the fourth issue. The judgment must be

Affirmed.